CENTRAL SURETY & INSURANCE CORPORATION, RESPONDENT, v. CLAUDE HINTON, APPELLANT.—130 S. W. (2d) 235.

Kansas City Court of Appeals. May 29, 1939.

*W. F. Wilkinson* and *W. Raleigh Gough* for appellant.

*R. S. Eastin* and *McCune, Caldwell & Downing* for respondent.

BLAND, J.—This is an action to recover reimbursement of certain payments made by plaintiff on account of alleged liability incurred by it under a certain master plumber's bond executed by plaintiff, as surety, and by defendant, as principal, to the City of Kansas City. The case was tried before the court, without the aid of a jury, resulting in a verdict and judgment in favor of plaintiff in the sum of $1137.55, the full amount sued for, and defendant has appealed.

Defendant, as a master plumber, was required by Sections 43-2 and 43-3 of the Building Code of Kansas City, to post with the city a

bond in the sum of $5000, conditioned that he would "save the city harmless from all damages to all persons or property resulting from or in any way growing out of any opening or excavation" made by him in the city streets. Such a bond was executed by defendant with plaintiff as his surety. Said bond provided that defendant shall "save the city harmless from all damages to all persons or property resulting from or in any way growing out of any injuries received on account of any opening or excavation made by him . . . in any street, . . . and shall comply with all ordinances of Kansas City, . . . and shall save Kansas City harmless on account of any damages or loss to it, caused by his breach of any of such ordinances, rules or regulations." This bond was in full force and effect on December 31, 1933, and January 1, 1934. To procure the plaintiff to execute the bond as surety for the defendant, he made a written application to it and, in the first part of the application, defendant agreed: "That the undersigned (defendant) will at all times, indemnity and keep indemnified the Corporation (plaintiff) and hold and save it harmless from and against any and all damages, loss, costs, charges and expenses of whatsoever kind or nature, including counsel and attorneys' fees, which the Corporation shall or may at any time, sustain, or incur by reason or in consequence of having executed the Bond herein applied for, . . . and that we will pay over, reimburse and make good to the Corporation, its successors or assigns, all sums and amounts of money which the Corporation or its representatives shall pay, or cause to be paid or become liable to pay, on account of the execution of any such instruments and on account of any damages, costs, charges and expenses of whatsoever kind or nature, including counsel and attorneys' fees, which the Corporation may pay or become liable to pay, by reason of the execution of any such instruments or in connection with any litigation, investigation or other matters connected therewith, such payments to be made to the Corporation as soon as it shall become liable therefor, whether the Corporation shall have paid out said sum or any part thereof, or not."

Sections 572, 573, 574 of the Revised Ordinances of Kansas City require that any person making an excavation in the public streets shall guard such opening by barriers and lights "and shall keep such lights burning from sunset to sunrise."

On December 31, 1933, pursuant to permission granted by the city to him, defendant made an observation in Benton Boulevard between Twenty-fourth and Twenty-fifth Streets in Kansas City. About four or five o'clock P. M., upon quitting work for the night, defendant erected barriers and lights around the excavation. Defendant happened to be at the place about nine o'clock P. M., and found the lanterns and barriers down. He again put them up. He had no further knowledge of the conditions after that time, nor did

he make any further effort to keep the lights burning and the barriers in place. About 11:30 or 12:00 o'clock that night a neighbor called up the city and notified it that the lights and barriers were down. The city did nothing about it and did not notify defendant. About 1:45 o'clock A. M., of January 1, 1934, one Luella Hurley was injured by reason of the automobile in which she was riding, being driven into the excavation.

Mrs. Hurley brought suit against the present defendant and Kansas City, claiming that her injuries were caused by the negligence of the two defendants in leaving the excavation unguarded by barriers, watchmen or lights. The two defendants proceeded to defend the case through their respective counsel. The attorneys for the city notified the attorney for the plaintiff herein that if Mrs. Hurley recovered any judgment against the city, the city would expect indemnity to the extent of the amount of the bond for any judgment recovered against it by Mrs. Hurley and which the city might be compelled to pay. The plaintiff herein made an investigation of the Hurley case and found that Mrs. Hurley was seriously injured. It ascertained that the defendant herein claimed to have put up the proper lights and barricades upon quitting work and found that they had been torn down about nine P. M.; that said defendant had replaced them and that he had no knowledge thereafter that the lights had again been displaced. It also discovered that Mrs. Hurley had a witness who was prepared to testify that the lights were down and that shortly before midnight he had called the city and notified it of that fact.

Shortly before the Hurley case was to go to trial, the attorney for the plaintiff herein decided that the case should be settled. It believed and had reason to believe, in good faith, that Mrs. Hurley would make out a *prima facie* case against the city; that the city had ample time ''particularly on a busy boulevard'' to have discovered the lights and barriers being down and have remedied the situation, and that there was a strong probability that the jury would return a verdict against the city in excess of $1000. (The amount for which the case was finally settled.) Plaintiff's attorney also testified that at that time he was of the opinion that the Hurley case was one of liability as against the defendant herein, but the court, upon defendant's motion, struck out this testimony.

Shortly before the case was to go to trial, plaintiff's attorney conferred with the attorney for the defendant and the latter agreed that as far as Mrs. Hurley's injuries were concerned, a settlement of $1000 would be an advantageous one. Plaintiff's attorney asked defendant's attorney to have defendant pay the amount of the settlement, but defendant's attorney said defendant did not have the money and, also, that there was no liability under the bond because Mrs. Hurley could not make out a case against the defendant. Defend-

ant's counsel agreed to see defendant and see what he was willing to do. Plaintiff's attorney did not believe that defendant's liability or non-liability in the Hurley case was material to the question of liability under the bond. Before defendant's attorney could report to plaintiff's attorney what defendant was willing to do in reference to the settlement, plaintiff's counsel, on account of the fact that the cases was to be tried the next morning, agreed to the settlement in the Hurley suit, under which Mrs. Hurley was paid by plaintiff the sum of $1000 for a full release and her suit was dismissed with prejudice at her cost.

Plaintiff then brought this suit to recover from the defendant the sum of $1000, which it paid Mrs. Hurley, together with court costs and expenses in the Hurley case, including attorney's fees. To the allowance of these expenses, totalling the sum of $88.10, defendant makes no protest on this appeal.

At the conclusion of all of the testimony, plaintiff requested certain findings of fact and conclusions of law and offered fourteen separate findings of fact, twelve of which were given and two of which were refused. Of course, this request of plaintiff for numerous findings of facts formulated by it was not in compliance with Section 952, Revised Statutes 1929, but no point is made by defendant as to this matter. Defendant requested six so-called conclusions of law, two of which the court gave and four of which it refused.

From an examination of the findings of fact given and refused it appears that the court found the facts as hereinbefore narrated and found that before entering into the settlement, plaintiff, in good faith, believed that Mrs. Hurley would make out a *prima facie* case against the city and believed that there was a strong probability that she would recover a verdict and judgment against the city in a sum in excess of $5000 and, in such event, plaintiff would have been sued by the city on the bond; that plaintiff believed, in good faith, that the city could, in such a case, recover on the bond; that a suit by Mrs. Hurley against the city and the defendant would have resulted in a judgment in favor of the latter; that plaintiff did not, in good faith, believe that Mrs. Hurley could make out a case against the defendant or could recover a judgment against him.

However, the trial court was of the opinion that it was not necessary, in order for there to have been a recovery on the bond, that Mrs. Hurley could have made out a case against the defendant herein and found that liability against defendant on the bond would have resulted from a judgment of Mrs. Hurley against the city, alone.

The court gave a declaration of law, offered by defendant, to the effect, that plaintiff could not recover for any payments made by it as a result of a mistake of law upon its part as to the extent of liability assumed by the plaintiff under the bond.

Defendant contends that the court erred in rendering judgment

against him for the amount of the Hurley settlement, to-wit, $1000, because the evidence shows, and the court found, that no recovery against the defendant could have been obtained by Mrs. Hurley in her suit for the reason that the defendant was not guilty of any negligence; that this fact would have been a complete defense to any suit by the city on the bond; that a surety cannot recover of the principal for payments made by it, with knowledge of the facts, on a claim on which there is no legal liability. That such is the rule as to recovery at common law, there is no question. [See 50 C. J., pp. 252, 253; 31 C. J., p. 431.]

However, plaintiff contends that, *under the terms of the bond,* the surety would have been liable to the city for the amount of any judgment obtained against it by Mrs. Hurley up to the amount of the face of the bond, if the city was negligent, even though Hinton was not.

A party may recover any loss which he has sustained as the result of the negligence of a primary wrong-doer, where, because of the relations of the parties, he has been held legally responsible for the wrongful conduct of such primary wrong-doer; but if the indemnitor and the indemnities are in *pari delicto,* no action for indemnity lies at common law. [Kansas City v. Mullins, 209 S. W. 558; Kinloch Telephone Co. v. St. Louis, 268 Mo. 485; Mo. Dist. Telegraph Co. v. Southwestern Bell Telephone Co., 336 Mo. 453; City of Springfield v. Clement, 203 Mo. App. 114; 31 C. J., pp. 448 to 451.]

The bond provides that Hinton will save the city harmless "from all damages to all persons or property resulting from or in any way growing out of any injury received on account of any opening or excavation made by him" in any street, etc.

In Mo. District Telegraph Co. v. Southwestern Bell Telephone Co., 338 Mo. 692, the language of the indemnity agreement, as that of the bond here, "was very broad and indefinite," (l. c. 711), but, nevertheless, the court held that there can be no recovery under such a bond where the indemnitee, as here, was negligent, where the parties are in *pari delicto,* unless the bond unequivocally provides that the indemnitor shall indemnify the indemnitee for the consequences of the latter's own wrong. [l. c. 711.] In that case the court recognizes the rule laid down in St. Louis & S. F. Ry. Co. v. Stewart, 187 S. W. 836, holding that a contract of indemnity should be construed as intended to indemnify against the indemnitee's own negligence where the latter "had no voice on the premises, . . . while, on the other hand, defendant's (indemnitors) had full charge and control of the buildings and the employees." [Mo. Dist. Telegraph Co. v. Southwestern Bell Telephone Co., *supra,* l. c. 710.] The court in the Mo. Dist. Telegraph Company case also commented upon Heman Const. Co. v. City of St. Louis, 256 Mo. 332, and Kinloch Telephone Co. v. City of St. Louis, 286 Mo. 485, l. c. 711, 712, and

distinguishes them from the case there at hand which held that there could be no recovery under the indemnity agreement where the negligence of the indemnitee contributed to the cause of the loss, the indemnitee not having given up control of the property.

We are, therefore, of the opinion that the bond in the case at bar was given merely to reinforce the obligation imposed upon the defendant by common law by supplying a surety of undoubted solvency. [See Kinloch Telephone Co. v. St. Louis, *supra*, l. c. 501.] The bond was not for the purposed of securing from the defendant a policy in the nature of liability insurance and defendant, not having been liable to the city at common law under the facts, was not liable under the bond. A judgment for Hinton in the Hurley suit would have established conclusively his non-negligence as between him and the city. [Gerger v. K. C., 311 Mo. 49; Kinloch Telephone Co. v. St. Louis, *supra*; Kansas City v. Mullins, *supra*; Wiggin v. St. Louis, 135 Mo. 558; Kilroy v. St. Louis, 242 Mo. 79; K. C. v. Mitchener, 85 Mo. App. 36.] We do not see that the provisions of the Building Code has any bearing upon the situation.

The fact that the provisions of the bond do not impose any greater obligation upon the defendant than that imposed upon him under the common law, by no means deprives the bond of any value, force or effect. Bonds more often than not are given to enforce obligations which already exist under the law, and not to create new obligations, such as attachment bonds, fiduciary bonds conditioned that the obligator shall account for funds entrusted to him, contractors bonds given to secure the duty to build according to the contract and to save harmless from liens. In all of those cases, as well as the case at bar, the bond is given merely to enforce the obligation already existing by supplying a surety of unquestioned financial worth.

However, it is claimed that the particulars which gave rise to Mrs. Hurley's death were under the exclusive control of the defendant. If this be true, no doubt, the bond protected the city, even though Hinton was negligent. [See St. Louis & S. F. Ry. Co. v. Stewart, *supra*; Mo. Dist. Telegraph Co. v. Southwestern Bell Telephone Co., *supra*.] However, this is not the fact here. The city, generally, has control of its streets and, of course, it cannot be assumed that merely because it permitted defendant to make the excavation, it gave up such control. Defendant has failed to cite any authority to the effect that a municipality is empowered, in any instance, to surrender complete control of its streets. There are certainly no facts in this case showing that it attempted to do so in this instance.

We have examined the case of North Am. Ry. Const. Co. v. Cinn. Traction Co., 172 Fed. 214, 216, cited by plaintiff. That part of the opinion quoted by plaintiff is authority against it, under the facts in this case. Said part reading as follows: "Contracts of indemnity such as the one here sued upon, are usually intended to provide

against loss or liability of one party, through the operations of the other, or caused by physical conditions that are under the control of the other—over which the party indemnified has no control, and the party indemnifying has control."

However, it is claimed that the equities of the indemnitor and the indemnitee in the case of Mo. Dist. Telegraph Co. v. Southwestern Bell Telephone Co., *supra,* and in the case at bar, very different; that in the former case the action was one for contribution between joint tortfeasors, all of whom stood in the same position; that the Telephone Company owned the telephone pole in question in that case and permitted plaintiff to utilize the pole jointly with it for a consideration in money; that the property was jointly used by the two companies for their profit and benefit, in carrying out their respective business; that, here, the city gave permission to make the opening in the city street without any consideration or benefit to it; that Hinton was not acting in the city's behalf when he dug the hole, but for himself, and for his own benefit; that the privilege given Hinton to the city was purely a gratuitous one; that the city was privileged to either grant or deny permission to dig in its streets.

The court in the Mo. Dist. Telegraph Co. v. Southwestern Bell Telephone Co., *supra,* and in the case cited therein, makes no such distinction as plaintiff attempts to make in this case. In fact, there is no basis in the record for plaintiff's contention that the privilege granted to Hinton was a purely gratuitous one on the part of the city. There is nothing in the record indicating what Hinton was attempting to accomplish by digging the excavation. He was a plumber and the ordinance required a bond. It also provided that any person mentioned therein should be examined "as to his qualifications, experience and skill of practical plumbing, house drainage and gas fittings." He probably was doing work of the character described in the ordinance but for whom he was doing it the record is silent. From all the record shows Hinton may have been doing work for the city. But regardless of that the city has no right to turn over its streets for excavation or other purposes purely for the benefit or gainful purposes of another. [44 C. J., p. 938.] For all the record discloses, Hinton may have been doing the work in connection with the laying of water or sewer pipes for property owners whose lots adjoined the street and who owned the fee therein, the city merely exercising an easement for street purposes. Under such circumstances the city is compelled to permit the owner or his agent to lay pipes below the surface of the street for the conveyance of water, gas, etc., subjects to the use of the street by the public. The only right the city has in such instances is to regulate the work. [44 C. J., p. 954; Colegrove Water Co. v. Hollywood (Calif.), 13 L. R. A. (N. S.) 904.]

Therefore, the evidence far from discloses that a purely gratuitous privilege was extended to Hinton in this instance, which the city could

have withheld at its pleasure. From all the record shows the city was compelled by law to grant the permission.

We have examined K. C., M. & B. R. R. Co. v. So. Ry. News Co., 151 Mo. 373, and Wab. R. R. Co. v. Ordelheide, 172 Mo. 436, cited by plaintiff. The situations in these cases are not on all fours with that in the case at bar. They might be distinguished on that basis. However, these cases were decided by the Supreme Court before the decision in Mo. Dist. Telegraph Co. v. Southwestern Bell Telephone Co., *supra*. The last mentioned case is controlling authority. We have examined Casey v. Virginian Ry. Co., 85 Fed. (2d) 976; City of Cleveland v. B. & O. Ry. Co., 71 Fed. (2d) 89, and similar cases cited by the plaintiff. All of these are decisions of foreign jurisdictions. In both of these cases the law laid down is contrary to that announced in the Mo. Dist. Telegraph Company case, which case we must follow. It appears that the descenting opinion in Casey v. Virginian Ry. Co., *supra*, in general, conforms to the law as announced in the Mo. Dist. Telegraph Company case. Southwestern Bell Telephone Co. v. Mayor & B. of A., 74 Fed. (2d) 983, is more in harmony with the last-mentioned case.

However, it is insisted that the record does not support the conclusion of Hinton's non-liability to Mrs. Hurley. In this connection plaintiff says that Benton Boulevard is a much traveled street; that December 31st "is known to be an occasion upon which many people stay up late at night and frequently indulge in intoxicating beverages. Accidents and pranks are each the order of the day;" that under the provisions of Sections 572, 573 and 574, Ordinances of Kansas City, Hinton's full duty was not performed to Mrs. Hurley because he placed lights and barriers at the excavation at 9 P. M. prior to her injury at 1:45 A. M.

The trial court was within its rights in finding, under the evidence, that defendant was not negligent notwithstanding the ordinance. [Myers v. The City of Kansas, 108 Mo. 480; Pyburn v. Kansas City, 166 Mo. App. 150.] However, the question as to whether Hinton was liable to Mrs. Hurley was not an issue in this case for the reason it was not pleaded. As before stated, it was necessary that Hinton be liable to Mrs. Hurley before he became liable on the bond to the city. The petition is based entirely upon the theory that Hinton was liable because the city was liable. There is no allegation contained therein to the effect that Hinton was liable. In addition to this, the court found that "under the pleadings and evidence in this case, the suit of Mrs. Hurley against the defendant and the city would have resulted in a judgment in favor of defendant, and that such judgment would have conclusively established, as between defendant and the city, the absence of negligence on the part of defendant with respect to the injury for which Mrs. Hurley brought said suit."

Defendant points out that we are not bound by the conclusions or

declarations of law of the trial court. However, an examination of this declaration by the court discloses that it is a mixture of a finding of fact and a conclusion of law, the first part being a finding of fact and the latter part, a conclusion of law. In addition to this, from the refusal of the findings of fact requested by plaintiff it clearly appears that the court found that there could have been no recovery by Mrs. Hurley against Hinton. Both parties having tried the cause upon the theory that this was a matter upon which the court could so find, they are bound by that theory in this court. [Tomlinson v. Ellison, 104 Mo. 105, 112; Cantley v. Am. Surety Co., 225 Mo. App. 1146; Monnig v. Easton Amusement Co., 27 S. W. (2d) 495; Steel v. Johnson, 96 Mo. App. 147.] This court has no authority, in a purely law case, to weigh the testimony. [Slack v. K. C. Gas Co., 120 S. W. (2d) 70.] The findings of facts are conclusive as far as this court is concerned. [City of DeSoto v. Am. G. F. Mut. Fire. Ins. Co., 102 Mo. App. 1.]

However, a plaintiff contends that it is entitled to recover upon the second part of the indemnity contract between the parties hereto. This part reads as follows: "And we (defendant) further agree that in any accounting which may be had between us and the Corporation (plaintiff), the Corporation shall be entitled to credit for any and all disbursements in and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether such liability, necessity or expediency existed or not."

Defendant contends that the petition is not based upon this provision of the contract. We think defendant's contention is well taken. The petition is clearly based upon that part of the contract providing for reimbursement for the items mentioned therein for which the plaintiff should become liable and not for the disbursements which it should make in good faith whether liable therefor or not. It is true, that the petition pleads that defendant, in good faith, settled the case of Hurley v. Kansas City in the honest belief that the case, if tried, would have resulted in a judgment against the city. Of course, defendant could not have settled it, except in good faith, with any expectation of holding Hinton. The pleading of good faith merely went to the matter of the settlement of the suit against the city. The allegation in this connection being: "Said settlement was entered into by this plaintiff in good faith and in the honest and reasonable belief that if said suit had gone to trial the injuries suffered by said plaintiff and the testimony relating to liability therefor was such that it was extremely probable that a judgment would be rendered in favor of said Luella Hurley against Kansas City in a sum greatly in excess of $1000, in which event this plaintiff would have been liable to respond therefor up to the sum of $5000. Such action of plaintiff in making such settlement was in good faith and its action therein was reasonable

and taken for the purpose of minimizing and reducing the claim of said Luella Hurley to the least possible amount."

It can readily be seen by this allegation that there is no statement in the petition that plaintiff, in good faith, believed that it would be liable to the city because if the city were liable Hinton and plaintiff would be liable but stated, positively, that in view of the settlement made with Mrs. Hurley, plaintiff would be liable. In other words, the petition is based upon an allegation of liability founded upon the theory that merely because the city was liable to Mrs. Hurley Hinton was also liable to her, rather than belief, in good faith, in the liability of Hinton and plaintiff because the city was liable.

As before indicated, it is necessary to reverse the judgment in this case for the reason there was no pleaded liability shown. However, plaintiff is entitled to have the cause remanded so that it may amend its petition and allege a cause of action under the first and second part of the agreement, or either of them. As the question of the validity of the second part (defendant contending it to be invalid) probably will come up at another trial, it is proper for us to pass upon that matter now.

Defendant contends that the last part of the indemnity contract, if valid, should be strictly construed because it makes plaintiff the final arbiter of all its rights, and for this reason it runs counter to every principle of natural right and justice; that it attempts to deprive the courts of their power to construe contracts when the power to do so is solely in the courts; that it should not apply in this case because to give it the effect it would allow plaintiff to recover for a mistake of law as opposed to a mistake of fact.

Similar provisions have been before the courts of this country many times. Some of these contracts provide that all vouchers, accounts, and other evidence of payment of loss, shall be conclusive evidence of the fact and the extent of the principal's liability to the guaranty or surety company. Some contracts provide that such vouchers, accounts or other evidence of payment shall be *prima facie evidence only* of such liability and other contracts provide that any voucher or other evidence of payment shall be such conclusive evidence, except for fraud, and still others that such payment shall be conclusive if made by the surety in good faith. Some courts have held invalid a stipulation in an indemnity or guaranty contract making any voucher account or other evidence of payment of loss conclusive evidence of the fact and extent of liability on the ground that they are against public policy as ousting the courts of their jurisdiction. [See Fid. & Dep. Co. of Md. v. Davis, 68 A. L. R. 321; Fid. & Cas. Co. v. Eickhoff, 63 Minn. 170.] Other courts hold that this last-mentioned provision will be enforced insofar as such voucher account or other evidence of payment is made *prima facie* evidence of liability. [See Fid. & Cas. Co. v. Eickhoff, *supra.*] Other courts

hold the provision valid if the payments are made in good faith by the surety believing it liable therefor. [Fid. & Cas. Co. of N. Y. v. Harrison (Tex.), 274 S. W. 1002.] The weight of authority in this country is that a provision similar to the one in the case at bar is valid. [Nat'l. Surety Co. v. Fulton, 183 N. Y. S. 237; Fid. & Cas. Co. of N. Y. v. Harrison, *supra*; U. S. F. & G. v. Baker, 136 Ark. 227; Guarantee Co. of No. Am. v. Pitts, 78 Miss. 837; Ill. Surety Co. v. Maguire, 157 Wis. 49.] In National Surety Company v. Casner, 253 S. W. 1057, the court affirmed without discussing, the validity of a stipulation in an indemnity agreement to the effect that the vouchers or other evidences of debt should be *prima facie* evidence against the principal of the fact and amount of his liability due the surety by way of indemnity. The provision in the agreement in that case was somewhat different from this because in that case the vouchers, etc., were to be taken as only *prima facie* evidence of such matters. However, the court cited, approvingly, many cases upholding provisions similar to the one contained in the contract in the case at bar. The court stating, l. c. 1060: "It is difficult to see how language could be stronger in expressing the defendant's liability to the plaintiff for any settlement it might make upon the attachment bond, whether sued or not, provided such settlement was made in good faith. It will be remembered that Casner declined to participate in any settlement or to defend the suit. Contracts in similar terms have been construed by several courts where it has been held that a settlement of that kind made in good faith by the indemnitee makes the indemnitor liable for the amount paid. [Natl. Surety Co. v. Fulton, 192 App. Div. 645, 183 N. Y. S. 237; American Bonding Co. v. Alcatraz Construction Co., 202 Fed. 483, 122 C. C. A. 225; U. S. Fidelity & Guaranty Co. v. Baker, 136 Ark. 227, 206 S. W. 314; Peay v. Southern Surety Co., 141 Ark. 265, 216 S. W. 722; City of New York v. Baird, 176 N. Y. 269, 68 N. E. 364; Inhabitants v. Chase, 82 Mass. 303; Illinois Surety Co. v. Maguire, 157 Wis. 49, 145 N. W. 768.]"

The case of National Surety Co. v. Casner has been cited as authority for upholding the validity of a provision of an indemnity contract to the effect that any proper evidence or payment by the surety shall be conclusive evidence against the principal of the fact and the extent of the latter's liability to the company. [Fid. & Cas. Co. v. Harrison (Tex.), *supra*, l. c. 1004.] The court said, however, in the last-mentioned case, that the action of the surety in making payment must be in good faith and free of fraud.

The indemnity agreement in the respects now being considered is very general in its terms and broad enough to cover mistakes of law. So we see no reason why the agreement should not be construed as applying to a mistake of law made in good faith by the surety in making the disbursement. It is not in every case that a party is to be deprived of a right on account of a mistake of law. [See Platt v.

1232

Francis, 247 Mo. 296, 312, 313; Jones v. Squire, 137 La. 883, 892, 893; McDonald.v. Rankin, 92 Ark. 173; State ex rel. v. Fidelity & Deposit Co., 317 Mo. 1078; Exchange Bank v. Turner, 321 Mo. 1104; Searl v. School District, 133 U. S. 553, 563.] Many of these provisions which have been upheld by the courts provide that the vouchers, etc. shall be evidence of the *fact* as well as the amount of the principal's liability to the guaranty or surety and no such distinction relative to mistakes of law, as defendant now contends for, is made in any of the cases.

However, defendant says that the cases upholding these provisions were those where only the, dispute was as to a question of fact, such as the amount of the indemnity; that "In not a single case, does the court *refuse to review the facts,* relative to the question of liability, or hold that those matters are irrelevant, on the ground that the surety's good faith is the sole determinative. factor.". We think that such a case is to be found in Fid. & Cas. Co. v. Harrison, *supra.* In that case the Adams Express Company issued to defendant certain travelers checks, which he claimed to have been lost or destroyed. In order to procure the Express Company to cash the checks without their being produced, he gave a bond upon which the plaintiff therein was surety, to indemnity the Express Company against loss sustained by reason of the Express Company having paid the amount of the checks, without presenting or surrendering them at the time to the Express Company. The checks afterwards were produced but defendant's name was forged on all but one of them for a small amount. The plaintiff reimbursed the Express Company. The indemnity agreement had between plaintiff and the defendant provided that any proper evidence of the payment by plaintiff should be conclusive evidence against the principal (defendant) of the fact and the extent of the principal's liability to plaintiff. In that case the *fact* of liability was involved. The court stated: l. c. 1004: "Appellee (defendant) insists that since the jury found that the checks when presented were paid by the American Express Company upon forgeries of his signature, the loss, sustained by plaintiff surety company in reimbursing the Express Company for such payments, was not such such a loss as is legally comprehended in the language used in his contract of indemnity, referred to above."

The court held that defendant was liable under the indemnity agreement. It is true, that the court in the opinion held that, under a separate agreement between defendant and the Express Company, defendant was liable to the Express Company even though the name of the defendant on the checks was forged, yet, it, in effect, held that, regardless of this provision, the defendant was liable to the surety company under the indemnity agreement.

We have examined the Missouri cases cited by defendant. They are not in point as they involve arbitration agreements and other

agreements wherein an attempt was made to deprive the courts of their rightful jurisdiction to construe contracts.

In American Bonding Co. v. Alcatraz Const. Co., 202 Fed. 483, 485, the court said: "Such provisions in an indemnity agreement are obviously necessary to give a surety company the right which it should have under certain circumstances to make settlements, *and are wholly unlike those executory agreements for arbitration which are some times rejected as ousting courts of their proper jurisdiction.*" (Italics ours.)

In National Surety Co. v. Fulton, 183 N. Y. S. 237, 238, the court stated: "The reasoning of the cases in which 'conclusive evidence' provisions were held to be void seems to be that *it is contrary to public policy to permit the bonding party to be the sole judge of the rightfulness of his cause of action, and thus oust the courts of their jurisdiction.* On the other hand, in Guarantee Co. v. Fitts, *supra,* the court stated that—'The expense, delay, trouble, and risk of loss to the guaranty company is a sufficient safeguard against an unwarranted payment, and without such a stipulation as complained of here guaranty companies could not safely do business anything like as cheaply as they do, and to the evident advantage of the parties and of the general public.' It should be noted that most of the cases upholding the validity of such a clause do so only where the payment by indemnity company has been made in good faith, and hold that it could not be valid to protect it against its own fraud." (Italics ours.) In that case the validity of the clause was upheld.

Perhaps in a majority of settlements of claims for personal injuries it is necessary to reach a conclusion as to matters of law involved therein and it would seem that there is no good reason why conclusions upon such questions of law should not be covered by the term "good faith" as well as conclusions as to purely matters of fact. Of course, whether the settlement in this case, in view of the legal proposition involved, that is, whether defendant was liable on the bond merely because the city was liable to Mrs. Hurley, was made in good faith will be a question for the trier of the fact. We are not disposed to hold that plaintiff should be adjudged lacking in good faith, as a matter of law in view of the contrariety of opinion on the subject the country over and the paucity of authority in this state as to the question of liability to a municipality, on facts similar to those present here, on a bond or indemnity agreement couched in such general terms.

The judgment is reversed and the cause remanded. All concur.