**Mrs. Stone DULLEY, Appellant,**

**v.**

**Hugh BERKLEY, d/b/a Berkley Plumbing & Heating, and Richard R. Wilson, d/b/a Wilson Excavating Company, Respondents.**

No. 45689.

Supreme Court of Missouri, Division No. 1.

July 8, 1957.

Opinion Modified on Court's Own Motion Sept. 9, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 9, 1957.

879

Fred J. Freel, John R. Baty, Kansas City, for appellant.

Harold L. Holliday, Kansas City, and Douglas Stripp, Melvin J. Spencer, Kansas City, Watson, Ess, Marshall & Enggas, Kansas City, of counsel, for respondent Hugh Berkley.

Clyde J. Linde, Robert B. Langworthy, Billy S. Sparks, Kansas City, Langworthy, Matz & Linde, Kansas City, of counsel, for respondent Richard R. Wilson.

HOLMAN, Commissioner.

Action by plaintiff, Mrs. Stone Dulley, to recover damages in the sum of $15,000 for the death of her husband, Stone Dulley, which occurred in Kansas City, Missouri, on December 16, 1953. Mr. Dulley was killed while working in a ditch that was being excavated for the purpose of laying a sewer line. Originally, the defendants were Oscar Scott and wife, the owners of the property involved, Hugh Berkley, a plumber, and Richard R. Wilson who had furnished a machine and operating employees to excavate the ditch. Before trial the Scotts settled with plaintiff for $1,800 and the suit was dismissed as to them. The cause was thereafter tried and resulted in a verdict in favor of the remaining de-

fendants. From the ensuing judgment plaintiff had duly appealed. We have appellate jurisdiction since the amount in dispute is $13,200.

■ Upon this appeal plaintiff contends that each of the seven instructions given at the request of defendants was prejudicially erroneous. However, before considering the matter of alleged trial errors, we will consider the contention of each defendant that plaintiff did not make a submissible case as to him. In determining those issues we will view the evidence in the light most favorable to plaintiff.

At the time in question Scott was in the process of constructing two houses on land which was located near his grocery store at 34th and Hardesty in Kansas City, Missouri. He desired to run a sewer line in a northwesterly direction from a manhole in the center of Hardesty Street to the curb, thence north along the parking to a point, and thence west to the houses. The three steps involved in laying a line of that kind are, (1) excavation of the trench, (2) grading and leveling the bottom of the trench, and (3) the actual laying (cementing together) of the sections of pipe. Scott contacted defendant Berkley and discussed the matter of contracting with him to do the entire job. He thought the price was too high, however, and finally agreed to pay Berkley $50 for his labor in laying the pipe. Berkley also told Scott that Wilson would furnish a machine and two operators to do the excavating for $12.50 an hour, and Scott asked him to arrange with Wilson to furnish the machine for that work. He also requested that Berkley obtain laborers to grade and level the bottom of the trench.

Hugh Berkley testified that since an excavation permit would only be issued to a master plumber, he assumed that he would have to obtain the permit and did so. He also arranged with Wilson to send the excavating machine and spoke to Stone Dulley and John Bass about grading the trench. On the afternoon the machine was to start work Berkley picked up Dulley and Bass and drove them to the site of the project.

Stone Dulley had had at least 25 or 30 years' experience in ditch digging and excavation work. Bass had done plumbing work for three years, but had never worked in a ditch as deep as the one which was dug on the Scott job.

When the machine arrived, Scott helped the men locate the manhole and suggested that they start digging at the manhole rather than at the other end of the proposed line. He also pointed out to the machine operators the course he desired that the proposed line follow. Wilson's employees then started the operation of the machine and the actual digging of the trench. It was to be two feet wide and was ten feet deep at the manhole. The excavated dirt was piled on the west side of the ditch and there was evidence that it was deposited "right at the edge" of the trench. The claw of the machine had difficulty in penetrating the surface of the street and jarred the ground considerably in the excavation process. When the machine had dug a trench 25 or 30 feet long, Dulley got into it and started working around the manhole. A few minutes thereafter he called to Bass to get into the ditch and help him. Upon getting into the ditch Bass asked Dulley if he thought there was any danger of the ditch caving in and the latter answered, "No, he didn't think so." At that time Dulley was removing dirt from around the manhole and shoveling it to Bass who was shoveling the same dirt to a point farther north in the trench.

After Mr. Bass had been in the ditch a few minutes (working about ten feet from the manhole) a portion of the west wall of the ditch caved in and trapped him "up around the knees" so that he could not extricate himself. The machine was immediately shut down and Berkley, Scott, and Wilson's two men all got into the trench to help Dulley free Bass. There was some evidence that another cave-in

occurred shortly thereafter in the area around Mr. Bass. At any rate, after the rescue efforts had been in progress for a time, a large "chunk" of dirt caved in from the west wall of the trench which trapped and injured Mr. Dulley. The fire department was then called and its members were able to bring the two men out of the excavation, but Mr. Dulley was found to be dead.

Plaintiff presented two witnesses who qualified as experts in regard to the dangers incident to making excavations of this type and the generally accepted practices used for the safety of the workmen on such projects. Each expressed the opinion, in substance, that no ditch (except through solid rock) over four or five feet deep is safe to work in unless it is either "shored" or "side-sloped." "Shoring" may be described generally as placing a wall of boards along each vertical side of the ditch and holding these walls apart by jacks or 4X4's. As the words indicate, to "side-slope" a ditch is to dig the sides V-shaped at a sufficient angle (usually 45 degrees) that they will not cave in. The instant ditch was neither shored nor side-sloped.

The expert witnesses also testified that the excavated dirt should not be placed closer than two feet from the edge of the ditch; that the closer the dirt is piled to the edge of the ditch the more pressure there is on the sides of the ditch, which pressure sometimes causes the side of the ditch to cave in either at or below the surface, and that vibration from a machine such as the one used by Wilson would likely cause the sides to cave in.

■ We have concluded that plaintiff failed to make a submissible case against defendant Berkley. It seems undisputed that Berkley's sole responsibility on this project was to lay the pipe. Before he could lay the pipe someone had to (1) obtain an excavation permit, (2) dig the trench, and (3) grade or level the bottom of the trench. It is true that Mr. Berkley cooperated with Mr. Scott in obtaining the permit, in arranging for Wilson to do the excavating, and for Bass and Dulley to do the grading. There is no evidence, however, that these men were employed by Berkley or that he had any right to control the manner in which they did their work. Plaintiff did not actually contend otherwise, as her attorney, in his argument to the jury, stated, "As far as Mr. Berkley is concerned, this is the only thing that ties him to the excavation, that is that he—all he did was to get a permit and that he wasn't actually making the excavation."

■ The foregoing excerpt from the argument of plaintiff's attorney would seem to indicate the view that the mere fact that Berkley obtained the excavation permit would impose liability upon him with respect to the acts or omissions of everyone connected with the project. That view is perhaps based upon the fact that the permit (in accordance with appropriate ordinances) provided that it was not transferable and contained the following: "In accepting this Excavation Permit I, the below-named applicant, hereby agree to take all reasonable precautions to prevent accident or injuries to persons or property * * *."

It should be noted that we are not here concerned with any controversy between Berkley and the City of Kansas City, Missouri, or between him and a private individual who sustained injuries while using the street. It would appear that the instant ordinance was enacted for the purpose of aiding and protecting the city in discharging its duty to the public to keep the streets reasonably safe for use and travel. We see nothing in the permit or the related ordinance which would impose a duty upon Berkley to provide Scott's workmen on the project with a reasonably safe place to work, or which would make Berkley responsible for the acts or omissions of any other person connected with the project, it being noted that he had no agents or employees assisting him at the time. Hunt v. City of St. Louis, 278 Mo. 213, 211 S.W.

673; Central Surety & Insurance Corp. v. Hinton, 233 Mo.App. 1218, 130 S.W.2d 235.

Our view, as indicated, is that plaintiff failed to make a submissible case against defendant Hugh Berkley and hence the judgment in favor of that defendant should be affirmed and we need not consider any trial errors which relate solely to that defendant.

In support of his contention that plaintiff failed to make a submissible case as to him, defendant Wilson takes the position that he was under no duty with respect to the safety of the excavation, and violated no duty which resulted in the death of Stone Dulley. The trend of his argument is that he had no control over the preparation of the trench or the laying of the pipe; that the sole cause of the ditch caving in was the failure to shore, and since it was not his duty to shore the ditch he could not have been guilty of any negligence which caused Dulley's death.

We agree with the contention that there is no evidence that Wilson had any duty to shore the trench. It appears in the evidence that under the prevailing custom the workmen grading the trench (Dulley and Bass) would have done the manual work of shoring it, but we think it was the duty of Scott to direct that such be done. We also agree that there was evidence indicating that failure to shore the trench was negligence. We do not agree, however, that it may be said as a matter of law that such negligence was the sole cause of the casualty. The employees of Mr. Wilson were in control of the operation of the ditch-digging machine. There is ample evidence from which the jury could reasonably have found that Wilson's employees were piling the excavated dirt very close to the west edge of the trench and that such was negligence. This for the reason that there was evidence that the closer the dirt was piled to the edge of the ditch the more pressure there was exerted on that edge and that pressure tended to cause the adjacent wall of the ditch to cave in. In addition to evidence to that effect by plaintiff's experts, Ted Lueck, the operator of Wilson's digging machine, testified on cross-examination as follows: "Q. And the closer that dirt is piled to the edge of the ditch, the more likelihood there is that there is going to be a cave-in while that machine is in operation, isn't that right? A. Well, not only while the machine is in operation and afterwards, also."

The negligence of a defendant need not be the sole negligence or the sole cause of the injury. "A party is held liable if his negligence, combined with the negligence of others, results in injury to another." Floyd v. St. Louis Public Service Co., Mo. Sup., 280 S.W.2d 74, 78. In accordance with the foregoing, we rule that the jury could reasonably have found that Wilson was negligent, as heretofore stated, and that such negligence, combined with the negligence of Scott in failing to shore the trench, resulted in the fatal injury to Dulley and hence each could be held liable therefor.

Defendant Wilson also contends that plaintiff cannot recover against him because plaintiff's own evidence shows that Dulley contributed to the peril in which Bass was placed. In order to properly understand this contention it should be stated that it was plaintiff's trial theory that Dulley lost his life while attempting to rescue Bass from a position of peril from which Bass could not extricate himself and hence the usual standards relating to contributory negligence may not be followed. In effect, defendant Wilson's instant contention is that because plaintiff's expert evidence disclosed that the ditch in question was not a safe place to work unless it was shored, and since Dulley failed to shore it, his negligence in that regard was a factor in producing the perilous situation of Mr. Bass, and hence plaintiff would not be entitled to the benefit of the "rescue doctrine," and the contributory negligence of the deceased would bar her recovery.

■ The general rule relating to contributory negligence in a rescue situation is stated in 38 Am.Jur., Negligence, Section 228, page 912, as follows: "The rule is well settled that one who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made. In other words, in attempting to save the life of another, one is justified in exposing himself to danger in a manner that under other circumstances would deprive him of legal redress for injuries sustained."

The basic theory of the rescue doctrine (as applied to a situation such as the one before us) is that the negligence or wrong that imperils life is not only a wrong to the imperiled victim but is also a wrong (negligence) to his rescuer. Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1. In harmony with that theory of the extension of a defendant's negligence to the one who seeks to rescue an imperiled person, an exception has arisen in the application of the rescue doctrine to the effect that "if the third person's peril is due in part to the plaintiff's own negligence, such negligence is a contributing factor in producing any harm which he sustains in attempting to rescue the third person and, therefore, is a bar to his recovery against a defendant whose negligence also contributed to such harm." Restatement, Torts, Ch. 17, Section 472, p. 1242. See also Tarnowski v. Fite, 335 Mich. 267, 55 N.W.2d 824; Brown v. Columbia Amusement Co., 91 Mont. 174, 6 P.2d 874. As we have indicated, defendant Wilson contends that the foregoing exception is applicable in the instant case, and hence the benefit of the rescue doctrine is not available to plaintiff and she is barred from recovery by reason of the fact that Mr. Dulley was guilty of contributory negligence as a matter of law.

■ We have concluded that the quoted exception is not applicable under the factual situation before us and that this is a proper case for the application of the rescue doctrine. It may be that up to the time Bass was trapped by the cave-in, Dulley was guilty of contributory negligence (as applied to his own personal safety) in working in a trench which he should have known was unsafe. However, while Dulley was more experienced in excavation work than Bass, there is no evidence to indicate that he was in charge of the grading of the trench or that he had any control over Mr. Bass. Each were employees of Scott. They had the same duties and responsibilities. No act of the deceased had created the dangerous condition of the trench. It was not shown that either Bass or Dulley had been directed to shore the trench and they apparently were under no duty to do so. Therefore, since Mr. Dulley did nothing to affirmatively create the dangerous situation, and was under no duty to make the trench safe by shoring it, no negligence on the part of Stone Dulley was the cause of the initial cave-in and the resulting perilous situation in which Mr. Bass was placed. We have the further view that the situation is in no way affected by the fact that Dulley stated to Bass that he did not think the ditch would cave in.

The foregoing will indicate our view that plaintiff made a submissible case against the defendant Wilson.

■ We will next consider the contention of plaintiff that the trial court erred in giving Instruction No. 11 at the request of defendant Wilson. Briefly, that instruction provided that if the jury found that Wilson agreed only to supply a ditch-digging machine and two men to operate it to excavate the trench, at $12.50 per hour, and that he had no obligation to shore the trench, and that the death of Dulley was caused solely by the failure to shore the trench, the verdict should be for defendant Wilson. It is said by plaintiff that the instruction is prejudicially erroneous

because it wholly failed to hypothesize facts which would require a finding that the death of Dulley was not due, at least in part, to the negligence of Wilson's employees in piling the excavated dirt alongside the west edge of the ditch. With this we agree.

The instruction under consideration hypothesized facts which would exonerate Wilson of negligence in connection with failure to shore the trench, but it completely ignored the evidence indicating that his employees were negligent in the manner in which they piled the excavated dirt. We have already indicated our view that the evidence would reasonably authorize a jury finding that the fatal injury to Dulley resulted from the concurrent negligence of Wilson in the respect heretofore stated and the negligence of Scott in failing to shore the trench. It therefore follows that the instant instruction should have hypothesized facts which would have excluded the possibility that both Wilson and Scott were negligent and that their combined negligence caused the casualty. The fact that the instruction required a finding that Wilson had no obligation to shore the trench and that the death of Dulley was caused solely by failure to shore it, is not sufficient to make it a good "sole cause" submission because facts are not hypothesized therein which would require a finding that Wilson was not negligent in regard to the manner in which the dirt was piled. Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289; Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642; Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853.

■ We are not unmindful of the fact that in Rembusch v. Prebe, 358 Mo. 409, 215 S.W.2d 433, this court indicated that in a case where contributory negligence can be a defense, the failure of a sole cause instruction to negative the negligence of the defendant was not prejudicial error where the acts of negligence hypothesized as the sole cause of the casualty were those of the plaintiff, as plaintiff's negligence which directly contributed to cause his injury would be sufficient to bar recovery even though defendant may also have been negligent. In that case the sole cause negligence hypothesized was such as would have convicted plaintiff of contributory negligence. The instant case was submitted on primary negligence and hence the defendant Wilson was entitled to a proper instruction (with due consideration of the rescue doctrine) submitting the contributory negligence of Mr. Dulley as a defense. However, the sole cause negligence submitted in Instruction No. 11 was "failure to shore and crib the trench," which referred to the alleged negligence of Scott, and would not have constituted contributory negligence on the part of Dulley. In that situation it was necessary for the instruction to hypothesize facts which would have required a finding that Wilson was not negligent in the respect heretofore stated. In this connection it should be noted that the trial court, at the request of defendant Wilson, gave Instruction No. 5 which submitted the failure of Dulley to shore the trench as contributory negligence. For the reason indicated, the giving of that instruction was error and it should not be given in the same form upon another trial.

Defendant Wilson contends that Instruction No. 11 is sufficient and no additional facts were required to have been hypothesized therein because (1) the sole cause of the cave-ins was the failure to shore the ditch, (2) said defendant had no duty with respect to shoring, and (3) facts indicating negligence other than failure to shore (we assume this refers to the manner in which the excavated dirt was piled) were not required to be hypothesized in the instruction for the reason that there was no causal connection shown between such negligence and the fatal injury and it may not be said that such negligence was the proximate cause of Dulley's death. We ruled these contentions adversely to defendant Wilson in connection with our discussion of his contention that no submissible case was made as to him, and hence no point would

be served by any further consideration thereof.

We will not extend this opinion by a discussion of the alleged errors in regard to the giving of other instructions at the request of defendant Wilson. Counsel for said defendant and the trial court will have the opportunity to re-examine those instructions (in the light of the views herein expressed and the attack made thereon by plaintiff) and eliminate any errors therein upon another trial.

The judgment is affirmed as to defendant Hugh Berkley and reversed as to defendant Richard R. Wilson and the cause remanded for a new trial as to said defendant.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.