Argued December 16, 1943; affirmed January 25, 1944

# SOUTHERN PACIFIC COMPANY *v.* LAYMAN

### (145 P. (2d) 295)

Before BAILEY, Chief Justice, and BELT, KELLY, LUSK and HAY, Associate Justices.

*James C. Dezendorf,* of Portland (Alfred A. Hampson, of Portland, on the brief) for appellant.

*John H. Carson,* of Salem (Carson & Carson, of Salem, on the brief) for respondent.

LUSK, J.

This is a suit in equity for the specific performance of a covenant of indemnity contained in a written agreement by which the plaintiff and appellant, Southern Pacific Company, permitted the defendant and respondent, Henry Layman, to construct, maintain and use a private road crossing upon the plaintiff's right of way and over its railroad in Marion county, Oregon. When the agreement was entered into on December 1, 1920, Layman was the owner of certain real property adjacent to the plaintiff's main line track and right of way. Subsequently, and prior to the occurrence which gave rise to this litigation, Layman sold and conveyed his interest in the property to John W. Luckey, who was made a party defendant in this suit but was never served with process, and as to whom the suit was dismissed at the trial on motion of the plaintiff. Layman will hereafter be referred to as the defendant.

The agreement is on a printed form prepared by the railway company. The plaintiff is termed the "Licensor" and the defendant the "Licensee". The clause thereof which plaintiff seeks to enforce reads:

"Licensee shall and hereby expressly agrees to indemnify and save harmless the Licensor and its lessor from and against any and all loss, damage,

injury, cost and expense of every kind and nature, from any cause whatsoever, resulting directly or indirectly from the maintenance, presence or use of said crossing.''

The agreement also contains the following provisions:

"3. Licensee shall, at Licensee's sole cost and expense, under the supervision and to the satisfaction of the Licensor, maintain and keep such crossing in good repair.

"4. Licensee shall, at Licensee's sole cost and expense, provide and erect such fence gates as may be designated by the Licensor; said gates to be approved by Licensor and to be erected under its supervision and to its satisfaction, and the Licensee shall thenceforth maintain and keep said gates in good repair to the satisfaction of said Licensor.

"5. Licensee shall at all times keep said gates closed and securely locked, except when said crossing is being actually used.

"6. Licensee shall and hereby expressly agrees to indemnify and save harmless the Licensor and its lessor from and against any and all loss, cost or damage which Licensee or any person or persons may suffer or sustain by reason of the entry of live stock upon said property or railroad through said gates, and from any and all judgments which any person or persons may recover from Licensor by reason of any such loss or damage.

"7. Licensee shall not permit said crossing to be used by the public or by any person or persons except Licensee, Licensee's family, tenants and employees, it being expressly understood and agreed that said crossing is a private one and is not intended for public use.''

On August 15, 1939, an International harvesting machine owned by one Joseph Serres was struck and

practically demolished by one of plaintiff's trains while upon the private road crossing in question. It is conceded that the accident was the direct result of the plaintiff's negligence in the operation of its train. Serres made claim to the plaintiff for damages in the amount of $2,568.60. The plaintiff called upon the defendant to defend the claim, which the latter declined to do. Before suit was brought the plaintiff settled the claim for $1,850.00. There is no contention that the settlement was not reasonable and advisable.

Plaintiff then brought this suit to recover the amount so paid, together with a reasonable attorney fee, as provided in the agreement. The circuit court entered a decree dismissing the suit and the plaintiff has appealed.

LUSK, J. The question for decision is whether the indemnity clause covers a case of loss suffered by the plaintiff solely as the result of its own negligence in the operation of one of its trains.

We do not stop to inquire whether the agreement, if so construed, would be valid. That question has not been raised, although, according to the editors of American Jurisprudence, a majority of the American courts hold that an agreement to indemnify against the negligence of the indemnitee is void as against public policy: 27 Am. Jur., Indemnity 460, § 9. See, also, 17 C. J. S., Contracts 644, § 262; 38 A. L. R. 583-588; *Johnson v. Richmond & D. R. R. Co.*, 86 Va. 975, 11 S. E. 829. Such agreements, however, are held, or assumed to be, valid in a large number of adjudicated cases, and it is also held that a railway company, not acting as a common carrier but in a private character as a property owner, may lawfully contract for indemnity against its own

negligence: *Cacey v. Virginian Ry. Co.,* 85 Fed. (2d) 976 (4th Cir.), and cases there cited.

Assuming the validity of such a contract, we are of the opinion that the clause in question cannot properly be given the meaning claimed for it by the plaintiff.

■ It is a firmly established rule that contracts of indemnity will not be construed to cover losses to the indemnitee caused by his own negligence unless such intention is expressed in clear and unequivocal terms. In *Perry v. Payne,* 217 Pa. 252, 262, 66 Atl. 553, 11 L. R. A. (N. S.) 1173, 10 Ann. Cas. 589, the court said:

> "We think it clear, on reason and authority, that a contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms. The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it."

See to the same effect *Mynard v. Syracuse, etc., R. R. Co.,* 71 N. Y. 180, 27 Am. Rep. 28; *Mitchell v. Southern Railway Co.,* 124 Ky. 146, 74 S. W. 216; *Houston & T. C. R. Co. v. Diamond Press Brick Co.,* (Tex. Civ. App.) 188 S. W. 32; *Marshall v. Maryland, D. & V. Railway Co.,* (1 W. W. Harr.) 31 Del. 170, 112 Atl. 526; *Manhattan Railway Co. v. Cornell,* 7 N. Y. S. 557, affirmed 130 N. Y. 637, 29 N. E. 151; *The George H. Dingledy Lumber Co. v. Erie Railroad Co.,* 102 Oh. St. 236, 272, 131 N. E. 723; *North American Ry. Const. Co. v. Cincinnati Traction Co.,* 172 Fed. 214 (7th Cir.); *Washington & Berkeley Bridge Co. v. Pennsylvania Steel Co.,* 215 Fed. 32 (4th Cir.); *Wallace v. United*

*States,* 16 Fed. (2d) 309, affirmed 18 Fed. (2d) 20 (9th Cir.); *Shamrock Towing Co., Inc. v. City of New York,* 16 Fed. (2d) 199 (2d Cir.); *Southern Bell Telephone & Telegraph Co. v. Mayor,* 74 Fed. (2d) 983 (5th Cir.); *J. Glant v. Lloyd's Register,* 141 Wash. 253, 263, 251 P. 274, 252 P. 943; *Missouri Dist. Telegraph Co. v. S. W. Bell Tel. Co.,* 338 Mo. 692, 711, 712, 93 S. W. (2d) 19; 27 Am. Jur., Indemnity 464, § 15; 31 C. J. Indemnity 431, § 24; 17 C. J. S., Contracts 644, § 262; 5 Elliott on Contracts, § 4007.

In *Mynard v. Syracuse, etc., Railway Co.,* supra, the court said:

> "When general words may operate without including the negligence of the carrier or his servants, it will not be presumed that it was intended to include it. Every presumption is against an intention to contract for immunity for not exercising ordinary diligence in the transaction of any business, and hence the general rule is that contracts will not be so construed, unless expressed in unequivocal terms."

■ Construing such provisions, the courts take into consideration the harsh results which would follow from an interpretation imposing liability on the indemnitor for the negligence of the indemnitee. In *Mitchell v. Southern Railway Co.,* supra, the court said:

> "When we consider the work to be done by the appellant was to yield him but a few thousand dollars in gross, and that his profits, if large, considering the work to be done, would necessarily be small in amount, it is improbable that he would undertake to indemnify the appellee against losses occasioned by its own acts of negligence. Especially is it so when one act of negligence by the appellee might not only sweep away the profits derived from the work, but his entire fortune."

In *Wallace v. United States,* supra (18 Fed. (2d) 21), Judge Dietrich, speaking for the Circuit Court of Appeals for the Ninth Circuit, said:

> "As is pointed out in Perry v. Payne, supra, we should not, in the absence of language free from all doubt, conclude that the parties intended the contractor should assume an obligation which, for a single act of negligence on the part of the owner, or of one of its employes, over whom the contractor had no restraint or control, would not only wipe out all profit, but would exceed the total consideration for the job."

■ Such contracts, it is said, "are usually intended to provide against loss or liability of one party, through the operation of the other, or caused by physical conditions that are under the control of the other—over which the party indemnified has no control, and the party indemnifying has control." *North American Ry. Const. Co. v. Cincinnati Traction Co.,* supra; *Wallace v. United States,* supra.

The language of the indemnity clause under consideration is undoubtedly broad and general enough to include loss caused solely by the plaintiff's negligence, but similar language has not deterred the courts from finding that no such meaning was intended by the parties.

> "There is no doubt the language of paragraph 7 is broad enough to bind appellee to indemnify appellant against the consequences of its own negligence, but it is not believed it should be construed as manifestly showing the intention of the parties to have been that it should so operate." *Houston & T. C. R. Co. v. Diamond Press Brick Co.,* supra.
>
> "For while the language of this part of the contract is very general, it cannot reasonably be so

construed as to impose upon the contractors the obligation to protect the plaintiff against the carelessness or negligence of persons in its own employment." *Manhattan Railway Co. v Cornell,* supra.

"General words *from whatever cause arising* may well be satisfied by limiting them to such extraordinary liabilities as carriers are under without fault or negligence on their part." *Mynard v. Syracuse, etc. R. R. Co.,* supra.

"Read literally, the language is undoubtedly broad enough to cover not only cases where both indemnitor and indemnitee are negligent, but cases where, as here, the indemnitee alone is chargeable. But in the light of the circumstances and of established principles of interpretation, should it be so understood?" *Wallace v. United States,* supra (18 Fed. (2d) 21).

The opinion of Judge Learned Hand in *Shamrock Towing Co., Inc. v. City of New York,* supra, would seem to go even further, for in that case, although a contractor had in express terms agreed to hold the city harmless for its (the contractor's) "negligent acts and omissions", the court refused to extend the agreement to a case of loss caused by the negligent acts both of the indemnitor and the indemnitee.

■ By the terms of the contract now in question it was the duty of the defendant to maintain and keep the crossing in good repair, and it is readily conceivable that his negligent failure to discharge that obligation might be the primary cause of an accident to one of the defendant's trains, which would result in injury to passengers and a consequent liability to the defendant. In such a case the plaintiff could invoke the indemnity clause of the contract. An interpretation which limits the general language of the agreement to instances of that character suffices to give effect to the agreement

and, in our opinion, is reasonable. The interpretation insisted upon by the plaintiff, we think, is unreasonable. It could result in subjecting a farmer to a ruinous liability arising out of the negligence of the plaintiff in the operation of its trains, an operation over which the defendant had no control. We do not believe that for the mere privilege of passing over the plaintiff's tracks the defendant intended to assume such a risk, or that the railway company intended to impose it.

Among cases in which the courts have construed similar indemnity agreements not to cover losses caused solely by the negligence of the indemnitee, but to apply where a liability is visited upon the indemnitee in consequence of the primary negligence of the indemnitor, see the following: *Southern Bell Telephone & Telegraph Co. v. Mayor,* supra; *Wallace v. United States,* supra; *Morton v. Union Traction Co.,* 20 Pa. Super. 325. See annotations 38 A. L. R. 584; 12 A. L. R. 1409. See, also, *Shamrock Towing Co., Inc. v. City of New York,* supra. Cf. *St. Louis S. W. Ry. Co. v. Arnold,* 32 Tex. Civ. App. 272, 74 S. W. 819.

The authority principally relied on by counsel for the plaintiff is the decision of the United States Circuit Court of Appeals for the 4th Circuit in *Cacey v. Virginian Ry. Co.,* supra, a case likewise involving the meaning of an indemnity clause in a lease which gave the defendants the right to pass over the right of way and track of the railroad. The language of the indemnity clause is similar to that in the present case, though more specific. The court refused to apply the rule of construction which we deem to be applicable, apparently because the indemnitee derived no benefit from the contract, and held the indemnitor liable to the railroad company in the amount of a judgment recovered against

it for a personal injury sustained at the crossing solely as the result of the negligent operation of one of the company's trains. Since the court thought that the railway company "would evidently not have consented to incur the additional risk of accidents from the existence of the right of way for practically no rental, unless it were indemnified in some way", it may be a matter of some significance that in that case there was involved what was in effect a public crossing which "added greatly to the hazard of injury by passing trains". No doubt, a measure of such additional risk was created by the maintenance of the private road crossing here, but we should suppose it to be comparatively small. Three judges sat in *Cacey v. Virginian Ry. Co.,* supra. There was a vigorous dissenting opinion by Judge Parker, who thought that the indemnity agreement did not cover personal injuries proximately caused by the railway company's negligence; and further, on the assumption that the language was ambiguous, was of the opinion that the coverage should not be construed to extend to the indemnitee's own negligence unless such intention was expressed in unequivocal terms.

The plaintiff also calls our attention to the following cases: *Louisville & N. R. Co. v. Atlantic Co.,* 66 Ga. App. 791, 19 S. E. (2d) 364; *Watkins v. Baltimore & O. R. Co.,* 29 F. Supp. 700; and *Kokusai Kisen Kabushiki Kaisha v. Columbia Stevedoring Co., Inc.,* 23 F. Supp. 403. The last mentioned case is distinguishable because the indemnity agreement was expressly made applicable to cases of loss, injury, death or damages "for which either or both of the parties hereto may or shall be liable". The case of *Louisville & N. R. Co. v. Atlantic Co.,* supra, involved an indemnity clause in a spur track agreement, and covered injuries which "grow out of

the construction or maintenance of said new track, or the operation of locomotives or cars thereover, or over tracks adjacent thereto, when said operation is in or about the business of the lessee''—language so specific as to differentiate that decision from the case at bar. *Watkins v. Baltimore & O. R. Co.*, supra, very likely is in point and is an authority for the plaintiff. All three of these cases cite and rely upon *Cacey v. Virginian Ry. Co.*, supra. We are disposed to agree with the dissenting opinion rather than that of the majority in that case, and especially do we concur in the view expressed by Judge Parker as to the applicable rule of construction. In this we find ourselves in harmony with the courts of Missouri, where the doctrine of the Cacey case has been expressly rejected: *Central Surety & Insurance Corp. v. Hinton*, 233 Mo. App. 1218, 1228, 130 S. W. (2d) 235. See *Missouri Dist. Telegraph Co. v. S. W. Bell Tel. Co.*, supra.

In our opinion the defendant did not agree to indemnify the plaintiff against the loss here in question; and it follows that the decree below should be, and it is, affirmed.