THE GRAY LINE COMPANY, a corporation, Appellant,

v.

THE GOODYEAR TIRE & RUBBER COMPANY, Appellee.

THE GOODYEAR TIRE & RUBBER COMPANY, Appellant,

v.

THE GRAY LINE COMPANY, Appellee.

No. 16604.

United States Court of Appeals Ninth Circuit.

June 30, 1960.

Koerner, Young, McColloch & Dezendorf, John Gordon Gearin, Portland, Or., for Gray Line Co., Appellant.

Phillips, Ralston & Poole, William C. Ralston, Portland, Or., for Goodyear Tire & Rubber Co., Appellee.

Before JERTBERG, MERRILL and KOELSCH, Circuit Judges.

JERTBERG, Circuit Judge.

The Gray Line Company, a corporation, plaintiff in the district court, instituted an action against The Goodyear Tire & Rubber Company, the defendant in the district court, in which it sought (1) to recover damages in the amount of $6,022.59 as a result of an accident occurring when one of its buses loaded with passengers overturned as a result of a tire blowout, which tire was owned by the defendant; and (2) that the defendant be required to assume the defense of all personal injury and property damage claims asserted by plaintiff's passengers, and that the defendant be required to hold plaintiff harmless for the amounts of any settlements, judgments, attorneys' fees, etcetera, incident to the defense or settlement of such claims.

Following pretrial conferences and trial, the court, sitting without a jury, rendered judgment in favor of the plaintiff and against the defendant in the amount of $5,961.34, it having been stipulated that the plaintiff's bus was damaged and depreciated in value in the amount of $3,722.59, and that plaintiff had been further damaged in the sum of $1,968.75 for the loss of use of said bus while the same was being repaired. The judgment further provides "that plaintiff is not entitled to anticipatory indemnification from the defendant".

The defendant appeals to this Court only from that part of the judgment which adjudged and decreed that the plaintiff recover judgment against the defendant in the sum of $5,969.34 and the costs and disbursements which were taxed at $532.30. The plaintiff appeals to this Court only from that part of the final judgment which decreed that the plaintiff is not entitled to anticipatory indemnification from the defendant.

The plaintiff, The Gray Line Company, is a corporation organized and existing under the laws of the State of Oregon. The defendant, The Goodyear Tire & Rubber Company, is a corporation organ-ized and existing under the laws of the State of Ohio. Hence, diversity of citizenship existed between the parties. The amount in controversy exceeds the sum of $3,000 exclusive of interest and costs. The district court, therefore, had jurisdiction under Title 28 U.S.C.A. § 1332, and under the declaratory judgment provisions contained in Title 28 U.S.C.A. §§ 2201 and 2202. This Court's jurisdiction to review the final judgment is based upon Title 28 U.S.C.A. §§ 1291 and 1294.

In view of the separate appeals from separate portions of the final judgment, we will present our views of these appeals separately.

First, we will consider the appeal of the appellant, The Goodyear Tire & Rubber Company. In such appeal we will hereafter refer to the appellant as "Goodyear" and the appellee as "Gray Line".

The damages in the amount of $6,022.-59 sought by Gray Line in its complaint consisted of bus damage in the amount of $3,722.59, loss of use of said bus while being repaired $2,250.00, and the sum of $50.00 which Gray Line paid to a passenger in a compromise adjustment and settlement of his claim for damages. In the statement of facts contained in the pretrial order it appears that the Gray Line had settled and compromised two of the claims made against it by passengers for the sum of $50.00 each.

There is no dispute on this appeal between the parties that on or about the 17th day of May, 1957, at a point on U.S. Highway 30, some 175 miles from Portland, Oregon, a Gray Line sightseeing bus carrying 43 passengers overturned causing damage to the bus, personal injuries and property damage to many of the passengers. The proximate cause of the accident was a blowout of the right front tire of the bus.

The tires on the bus were furnished by Goodyear under the terms of an agreement wherein Goodyear agreed to apply to, remove from, and remount on rims or wheels tires furnished thereunder, and to make necessary repairs on

said tires. Title to the tires so supplied was to remain in Goodyear. Gray Line in turn agreed to use exclusively tires furnished by Goodyear thereunder on buses operated by it in Portland, Oregon and the vicinity thereof, and agreed to pay for the use and service of said tires a mileage fee on each tire so furnished for all miles traveled by such tires in such service. Payment for the service was to be made monthly. Miles traveled were to be ascertained by an instrument maintained on each bus, which instrument was to be open for inspection by Goodyear at all times. Gray Line was required to furnish Goodyear all information to enable Goodyear to maintain individual tire records. As a part of the pretrial order, the parties stipulated under the heading "Statement of Facts" that "Prior to the 17th day of May, 1957, plaintiff and defendant entered into an agreement whereby defendant agreed to furnish plaintiff with pneumatic tires for use on motor buses owned and operated by plaintiff in interstate and intrastate commerce on public and other roads and highways in the state of Oregon and elsewhere."

In its findings of fact the district court found, in substance, that the proximate cause of the overturning of the bus was a blowout of the right front tire on said bus; that defendant impliedly warranted the tires which it supplied plaintiff would be fit for the use intended; that plaintiff relied on defendant's skill and judgment to supply tires fit for that use; that defendant had actual knowledge that the bus involved made many out-of-the-city-of-Portland trips and was used extensively in highway use; that the right front tire which blew out was not a tire either designed or constructed for highway use; that defendant was the sole actor so far as the placement of suitable tires and the maintenance thereof was concerned; that plaintiff had no actual or constructive knowledge that the tire that was placed on the bus by defend-

ant was unsuited for highway use; that the failure of the tire and the blowout was caused by heat generated internally due to a manufacturing defect consisting of an airpocket in the carcass of the tire, together with the use of the tire for highway purposes; and that the failure and blowout of the tire was the proximate cause of the bus overturning, due to the negligence of the defendant in faulty manufacture of the tire and faulty installation in that an improper type of tire was installed on the bus by the defendant.

The district court also made findings of fact exonerating the plaintiff from any claim or defense that any act or omission on the part of the plaintiff caused or in any way contributed to the accident.

On this appeal Goodyear challenges the findings of the district court that it impliedly warranted that the tires which it supplied plaintiff would be fit for the use intended, and that the defendant was negligent in the manufacture of the tire in question. Defendant's challenge to such findings is based upon defendant's contention that there was no evidence before the trial court of a breach of warranty or of a manufacturing defect. Additionally, Goodyear contends that even assuming such findings to be based upon sufficient evidence and not therefore erroneous that the provisions of Section 7 of the Tire Supply Contract[1] relieved Goodyear from liability, as a matter of law.

Goodyear does not deny that under the tire supply contract an implied warranty of fitness arose, but Goodyear contends that this implied warranty is limited to fitness for use on sightseeing buses in the City of Portland and vicinity, and not for highway use. Goodyear offered evidence designed to establish that the tire in question was fit for use on buses engaged in sightseeing in Portland and vicinity. The evidence on this subject was in conflict.

1. Sec. 7. "*Damage to Persons or Property* Operator will hold Goodyear harmless against all claim, action or causes. of action for damage arising out of the use of or possession of any tires furnished hereunder."

■■ We will now consider the scope of the implied warranty of fitness. We note first that the parties stipulated that Goodyear agreed to furnish Gray Line with pneumatic tires "for use on motor buses owned and operated" by Gray Line *"in interstate and intrastate commerce on public and other roads and highways in the state of Oregon and elsewhere."* (Emphasis ours) This stipulation is binding upon Goodyear as a judicial admission. Bockman v. Mitchell Bros. Truck Lines, 1958, 213 Or. 88, 320 P.2d 266. In addition to the judicial admission as to the scope of the warranty, there is other evidence in the record showing that Goodyear had knowledge not only that Gray Line's highway operations extended throughout Oregon and Washington, but had knowledge of the fact that the bus in question had made trips to cities in Oregon, Washington and California, and that its operations were in no wise restricted to the operation of sightseeing buses in and around the vicinity of Portland. It is to be borne in mind that Gray Line was the prevailing party on this appeal, and that all issues of fact on this appeal were resolved adversely to Goodyear, and that Gray Line is entitled to the benefit of all favorable inferences from the facts proved relative to the issue of liability. We have examined the entire record in this case and are satisfied that the finding of fact of the trial court that the implied warranty of fitness extended to and covered the highway operations of Gray Line is not clearly erroneous. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial judge to judge of the credibility of the witnesses. Rule 52(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

The record is clear that Gray Line relied on the skill and judgment of Goodyear in the selection of tires to be used in its bus operations. The tire which blew out was a heavy duty casing that was unfit for the high temperatures generated in highway travel. The witnesses were in general agreement that such a heavy duty casing was an inadequate and improper tire for highway operations because the thick casing was incapable of sufficiently dissipating the heat which is generated in high speed operations. The finding of the trial court that the right front tire which blew out on the bus was not a tire either designed or constructed for highway use is abundantly supported by the evidence. The breach by Goodyear of the implied warranty of fitness of the tire supplied to Gray Line for highway use was clearly established.

In respect to Goodyear's attack on the finding that Goodyear was negligent in the manufacture of the tire in question, we must review the charges of negligence which were before the district court. In its complaint Gray Line alleged that "On or about the 17th day of May, 1957, due to the negligence of defendant in the manufacture, installation, maintenance and inspection of a tire on one of plaintiff's buses, which tire was supplied by defendant, or the negligence of defendant in one or more of said respects, on U.S. Highway 30, approximately three miles west of Umatilla, Oregon, a tire blew out and plaintiff's bus was wrecked and damaged." This charge was repeated in substantially the same form in Gray Line's contentions contained in the pretrial order. Among the issues to be determined, as outlined in the pretrial order, is "5. Was defendant guilty of negligence in any one of the particulars charged, and if so, did such negligence constitute a proximate cause of the accident, upset and resulting injury and damage?" In its findings of fact the district court found that the failure and blowout of the tire was a proximate cause of the bus overturning, all due to the negligence of the defendant in faulty manufacture of the tire and faulty installation in that an improper type of tire was installed upon the bus by the defendant. The finding of the trial court that the failure and blowout of the tire was a proximate cause of the bus overturning, due to the negligence of the defendant in faulty installation, in that

an improper type of tire was installed upon the bus by the defendant is amply supported by the evidence and clearly sufficient to impose liability upon Goodyear. We therefore need not consider whether the finding of the trial court that Goodyear was also negligent in the faulty manufacture of the tire is supported by sufficient evidence.

Finally, we consider Goodyear's contention that the provisions of Section 7 of the contract relieved it of liability to Gray Line as a matter of law.

The leading contractual indemnity provision case in Oregon is Southern Pacific Co. v. Layman, 1944, 173 Or. 275, 145 P.2d 295. That case held that an indemnity provision phrased in the following terms:

"Licensee shall and hereby expressly agrees to indemnify and save harmless the Licensor [Southern Pacific] and its lessor from and against any and all loss, damage, injury, cost and expense of every kind and nature, from any cause whatsoever, resulting directly or indirectly from the maintenance, presence or use of said crossing."

did not sanction a recovery by the railroad when the cause of the loss to the railroad was solely the fault of the railroad indemnitee, and in no wise the fault of the landowner indemnitor. Hence, the early rule in Oregon would prohibit a recovery by Goodyear on account of its sole fault, when the indemnity clause invoked did not expressly mention negligence, as Section 7 did not. This is in accord with the great weight of authority. Cases are collected in 175 A.L.R. 8 (1948).

Goodyear argues, however, that this rule has been superseded by the case of Southern Pacific Co. v. Morrison-Knudsen Co., 1959, 216 Or. 398, 338 P.2d 665. In this latter case, the same railroad was permitted to recover indemnification for a loss after it had been determined that it was negligent in causing the loss. The indemnity clause read as follows:

"Industry hereby agrees to indemnify and save harmless Railroad, its agents, successors and assigns from all liability, cost and expense resulting directly or indirectly from the presence or use of said bunker."

Hence, Goodyear argues that we should apply this later ruling of the Oregon Supreme Court, and allow Goodyear to recover from Gray Line the loss for which it has been found liable because of its sole fault. This apparent conflict, however, is in our view readily resolved, and the cases are easily distinguishable. Both parties agree, however, that in these two cases lies the Oregon law as to the recovery by one for his own negligence under an indemnity clause that does not specifically deal with negligence.[2]

In Layman, Southern Pacific Company sought indemnity against a farmer to whom it had granted a crossing privilege. The recovery was sought for indemnification of a judgment which had been rendered against Southern Pacific in an earlier action by a third party injured in a crossing accident. The court held that since the indemnity agreement did not speak in terms of indemnifying Southern Pacific against its own negligence, the recovery would not lie. In Morrison-Knudsen, the Southern Pacific Company sought indemnity against a contractor to whom it had granted a spur track privilege. As in Layman, the recovery was sought for indemnification of a judgment which had been rendered against Southern Pacific in an earlier action by a third party injured in an accident on the spur track. The court held that this action would lie, even though the indemnity agreement did not speak

2. Our decision in Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695, while also applying Oregon law to an indemnity clause, is inapposite on the facts. In that case, the major fault for the loss to the indemnitee was that of the indemnitor lumber company. In the instant case, as in Layman, the fault for the loss to the indemnitee was that of the indemnitee itself, and not that of the indemnitor.

in terms of indemnifying Southern Pacific against its own negligence. The reason for the difference in result is clear from a closer analysis of both cases, for the court made it clear that the rule announced in the Layman case has been applied varyingly depending on the terms of the contracts and the nature of the parties involved.

In reconciling the two cases, the court laid emphasis on two main factors. First was a consideration of the privilege or gain to the indemnitor by virtue of the total agreement of which the indemnity clause played only a part. Secondly, the court considered the increased hazard or risk to the indemnitee by reason of extending the above noted privilege.

Thus, in Layman the benefit to the farmer in the form of a license to cross the railroad's track did not materially increase the risk or hazard necessarily concommitant with the railroad's operations. Hence, no indemnity was allowed on account of the railroad's own negligence in regard to an accident occurring because of the exercise of the privilege conferred. In Morrison-Knudsen, however, in addition to noting that spur track indemnity agreements have developed certain rules sui juris,[3] the court emphasized that a considerable degree of additional liability was assumed by the railroad by reason of the privilege conferred on the indemnitor. Because of the new and latent risks and hazards to which the railroad became subject, which risks were not usual in the railroad's business and subjected it to greatly increased liability, indemnity was allowed on account of the railroad's own negligence in regard to an accident occurring because of the exercise of the privilege conferred.

■ The perusal of the case at bar indicates that Goodyear, in seeking indemnity because of its own fault, comes squarely within the holding of Layman. The benefit extended to Gray Line un-der the tire supply contract did not materially increase the risk to Goodyear of its tire manufacturing and supply business. Indeed, the risk to Goodyear would be substantially the same whether it sold tires outright to Gray Line, or whether it merely supplied them under the mileage contract. Likewise, the gain to Gray Line was minimal, for whether it bought tires outright, or executed a mileage contract, in either event it had to pay for the tires used. In our view the district court did not err in refusing to relieve Goodyear of liability to Gray Line because of the provisions contained in Section 7 of the tire supply contract.

■ We will now consider the appeal of Gray Line from that portion of the judgment which decreed that it is not entitled to anticipatory indemnification from Goodyear. Gray Line contends that the trial court erred in failing to return judgment for indemnification in its favor for the compromise settlements in the amount of $50.00 each which Gray Line effected with two passengers, and that the trial court erred in failing to render a declaratory judgment that Goodyear be required to indemnify Gray Line for all future claims which might be settled and all judgments which might be rendered against Gray Line in respect to personal injuries and property damage sustained by passengers as a result of the bus accident. Turning first to the failure of the court to include in the final judgment the sum of $100.00 which Gray Line paid to two passengers in compromise settlement of their, claims for damages arising out of the bus accident, it appears to us that there is a complete failure of proof in the record on this subject. The only reference to this matter appears in the pretrial order, to the effect that Gray Line settled and compromised two claims made against it for the sum of $50.00 each, and that among the issues to be determined was whether Goodyear should be compelled to reimburse Gray Line for such expenditures. Apparently this item was lost in the

---

3. See the Annotation in 20 A.L.R.2d 711 (1952).

shuffle. There is nothing in the record to indicate the settlements made were reasonable in amount, or any other fact or circumstance relating to such settlement. Clearly, the trial court did not err in failing to include such expenditures in the final judgment. For aught that appears in the record the settlements may have been on the ground that the claims settled were of a nuisance character and made without any belief or recognition on the part of Gray Line of any legal liability to the claimants.

We now turn to Gray Line's contention that the district court erred in refusing to "award full indemnification to appellant". In the third claim contained in Gray Line's complaint it is alleged that as a direct and proximate result of the tire blowout and the ensuing accident 44 passengers on said bus were injured and their property and effects either damaged or lost, and said persons have asserted claims for personal injury and property damage against Gray Line. It is further alleged that Gray Line tendered said claims to Goodyear for adjustment, settlement or defense, and that Goodyear refused to assume said tender or to do anything toward the adjustment, settlement or defense of said claims. It is further alleged that Goodyear will be required to adjust, compromise or defend the unsettled claims and that Goodyear should be required to defend these claims and hold Gray Line harmless from all liability, costs and expense as a result of said claims. As a part of the prayer of the complaint, Gray Line prayed that the court order by judgment or decree that Goodyear be required to assume the defense of the claims asserted by the passengers and order that Goodyear hold Gray Line harmless for the amounts of any settlements, judgments, attorneys' fees, investigation expenses and any and all costs incident to the defense or settlement of said claims. Contained in the pretrial order, under the heading "Statement of Facts", it is stated that subsequent to the accident many claims were made by passengers riding in said bus for personal injury and property dam-

age, and that each party had tendered the claims to the other party for adjustment, settlement and defense, and that each has made demand upon the other to pay its damages, but each has refused to accept the defense of said claims or to pay the other's damages. Under the third claim of Gray Line's contentions contained in the pretrial order it is stated that Gray Line contends that Goodyear should be required to indemnify and reimburse Gray Line for all amounts which Gray Line has paid in settlement of the claims, and that Goodyear should be required to assume the defense of the claims made or to be made against it by the passengers on said bus, or in the alternative Goodyear should be ordered to reimburse and hold Gray Line harmless from all claims, demands, damages of whatever kind or nature, arising from said accident, including settlements, judgments, attorneys' fees and investigation expense and court costs, and that Gray Line should have judgment for the amount of its damages sustained in connection therewith. In the issues to be determined, contained in the pretrial order, are:

"7. Who should be compelled to assume the defense of the pending claims?

"8. Which one of the parties should be held harmless with respect to present and future claims arising out of said accident and upset?"

Included in the findings of fact of the trial court are the following findings:

"Subsequent to the accident, many and various claims were made by the passengers riding in said bus against the plaintiff and the defendant for personal injury and property damage, and a claim by the Royal Rosarians, the organization whose members were riding on said bus at the time of the upset.

"Plaintiff and defendant have each tendered the aforesaid claims to each other for adjustment, settlement and defense, and have made demand upon the other to pay its damages, but each has refused to

accept the defense of the said claims or to pay the other's damages."

As previously noted, it is stated in the conclusions of law that "Plaintiff is not entitled to anticipatory indemnification for which reason its claim for indemnification is denied." In the final judgment of the trial court "It Is Further Ordered, Adjudged and Decreed that plaintiff is not entitled to anticipatory indemnification from the defendant." There were introduced into evidence at the trial copies of the complaints filed in the Circuit Court of the State of Oregon for the County of Multnomah by 29 of the passengers in the bus against Gray Line and Goodyear. Each complaint sought money damages against Gray Line and Goodyear for personal injuries alleged to have been sustained in the bus upset. The demands in these complaints in the aggregate exceeded several hundred thousand dollars.

Each complaint alleged that at the time of the accident the Gray Line bus was being operated at a high, dangerous and reckless rate of speed, and was overloaded with passengers, and as against Gray Line charged negligence in the following particulars:

"1. In operating said vehicle at said time and place at a speed greater than was reasonable and prudent under the circumstances then and there existing, and at a speed so as to prevent said defendant from exercising proper or any control of said vehicle.

"2. In failing and neglecting to keep said bus under proper or any control, and in particular so as to safely bring said bus to a stop in case of tire failure.

"3. In failing to inspect the tires upon said bus, and particularly the right front tire.

"4. In operating said bus with tires that were unfit for road driving or use.

"5. In operating said bus with an over-load of passengers.

"6. In operating said bus with passengers standing in the vestibule or front part of said bus adjacent to the bus driver's seat."

Each complaint charged negligence as against Goodyear in the following particulars:

"1. In furnishing a tire to the defendant, The Gray Line Company, that was unfit for the purpose for which it was known to be used.

"2. In failing to inspect the tires on said motor bus, and in particular said right front tire.

"3. In failing to maintain said right front tire.

"4. In failing to warn the defendant, The Gray Line Company, that the right front tire furnished to it was not suited for road driving."

So far as the record in this case discloses, none of the complaints has proceeded to trial and no plaintiff has obtained a judgment establishing the liability of either Gray Line or Goodyear. There is no proof in the record that Gray Line has been actually damaged by any of the complaints which have been filed or any of the claims which have not reached the complaint stage, except the two claims which were compromised for $50.00 each and which have been disposed of in the preceding part of this opinion. Clearly, Gray Line is not entitled to indemnification under such circumstances. Apparently the theory of the trial court was that Gray Line would not be entitled to indemnification until Gray Line had sustained actual damage. The same view was apparently entertained by Goodyear, as it states in its brief that "The judgment of the trial court did not refuse to award proper indemnity to the plaintiff. It merely refused to award anticipatory indemnification," and "It is obvious that the claim of plaintiff for indemnity is premature. We do not, therefore, find it necessary to discuss the various cases cited in its brief concerning the right to indemnity in a proper case. None of the cases cited hold that a person may receive indemnity before actual damage." We interpret the conclusion of law reached by the trial court that "Plaintiff is not entitled to anticipatory indemnification for which

reason its claim for indemnification is denied" to mean that before a party may be entitled to indemnification from another such person must first establish that he has suffered actual damage by reason of the negligence or the breach of duty of such other party.

In our view, the district court construed the relevant portions of the pretrial order to mean that Gray Line was only seeking immediate indemnification. In doing so the trial court misconceived Gray Line's remedy and the relief which Gray Line sought. It is clear to us that Gray Line was seeking immediate indemnification only on account of the two claims totaling $100.00 which it settled, but was also seeking a declaratory judgment in respect to claims, complaints and expenditures which it might in the future be compelled to pay or incur. In short, Gray Line was pursuing the remedy afforded by Title 28 U.S.C.A. § 2201. This section provides under the heading of "Declaratory Judgments":

> "§ 2201. Creation of remedy
>
> "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

While this section was not mentioned in plaintiff's complaint, in its findings of fact the district court stated "This Court has jurisdiction of the proceeding by virtue of diversity of citizenship and also under the Declaratory Judgment Acts, 28 U.S.C.A. [§§] 2201–2202."

We find nothing in the record to suggest that the district court in any way considered, or passed upon the remedy and relief afforded by the provisions of such Section 2201. It would be completely premature and improper for us to review issues of law and fact which were before the district court but not considered or passed upon by it.

For the reasons and on the grounds hereinbefore set forth, that part of the judgment which adjudged and decreed that Gray Line recover judgment against Goodyear in the sum of $5,969.34, and the costs and disbursements which were taxed at $532.30, and from which Goodyear appealed, is affirmed; and that part of the judgment which adjudged and decreed that Gray Line is not entitled to anticipatory indemnification from Goodyear is reversed and remanded to the district court with directions to hear, consider and pass upon that phase of the case relating to the remedy and relief provided by the Declaratory Judgments Act, Title 28 U.S.C.A. § 2201, and with directions to grant the parties the right to file such amended or supplemental pleadings as they may be advised in relation to this phase of this case. We intimate no opinion as to whether the district court should or should not grant the declaratory relief which Gray Line seeks.