**BOISE CASCADE CORPORATION, Plaintiff,**

v.

**NICHOLSON MANUFACTURING COMPANY, a corporation, Defendant.**

**Civ. No. 61–152.**

United States District Court
D. Oregon.
Oct. 25, 1962.

George A. Rhoten, of Rhoten, Rhoten & Speerstra, Salem, Or., for plaintiff.

Donald W. McEwen, of Cake, Jaureguy, Hardy, Buttler & McEwen, Portland, Or., for defendant.

SOLOMON, Chief Judge.

Plaintiff Boise Cascade Corporation filed an action for $125,000 which it was required to pay in settlement of two negligence actions and which it seeks to recover from Nicholson Manufacturing Company under a contract of indemnity.

On June 3, 1957, Nicholson Manufacturing Company (Seller) entered into a "Barker and Slip Installation Agreement" (agreement) with Valsetz Lumber Company whereby it agreed to sell and install certain log barking machinery at Valsetz's sawmill in Union County, Oregon, for $176,639. Boise Cascade Corporation subsequently acquired by merger all of the assets of Valsetz Lumber Company, including the contractual rights under this agreement, and will hereafter be referred to as "Owner".

The contract was to be fully performed not later than September 30, 1957, but so much of the contract was to be performed by September 3, 1957, as to enable Owner to start barking logs on that date. Payment was to be made in three equal installments, the last of which was to be made when the barker met certain quality and quantity standards. The agreement further provided:

"8. Seller shall be responsible for all accidents and casualties of all kinds which may occur in connection with the installation of the barker during the progress of the work. Seller further agrees to indemnify and save harmless Owner from all casualties or accidents resulting from Seller's actions to any persons engaged in the work contemplated under this contract or to any third persons who may be injured by the Seller, its subcontractors, servants or agents in the performance of this contract. In addition, Seller shall be responsible for all damage to the property of Owner which may occur as a result of the work of Seller in performing its obligations under this contract. * * *"

Seller's liability was limited to $1,000,000 for public liability and bodily injuries and $1,000,000 for property damage. Seller agreed to provide liability and property damage insurance to cover its liability under the contract, and to furnish Owner with a certificate evidencing that such policies were in effect.

The machinery consisted of a 50-inch Nicholson Roto-Barker and a log slip which enabled logs to be transported from a pond to the level of the barker by means of a bull chain. Its installation required construction of a cat walk parallel to the log slip and housing for the barker.

By September 3, 1957, the machinery was installed sufficiently to permit daily operation of the barker. Seller's employees continued to work on the installation. They trained Owner's employees to operate the barker, helped to overcome mechanical difficulties encountered during the first few weeks of operation, and completed work on the housing and cat walk.

On September 20, 1957, two of Seller's employees were beneath the log slip placing a pillow block support for the cat walk. One of Owner's employees who was operating the barker without supervision caused a 45-foot log to back out of the barker ring and hit another log coming up the bull chain. The second log collided with a third log causing them both to rise out of the log slip and fall upon Seller's two employees. The Owner's negligence was the sole cause of the accident.

Both of the men brought actions against the Owner for negligently causing their injuries. Owner settled the actions for $125,000 and now seeks indemnification on the basis of the clause reading: "Seller shall be responsible for all accidents and casualties of all kinds which may occur in connection with the installation of the barker during the progress of the work."

Owner contends that the two injured men were engaged in "installation of the barker" at the time of the accident, and that the clause should be enforced because it clearly covers this accident even though it was caused by Owner's sole negligence. Seller contends that "installation" ceased the moment Owner assumed control over the barker and began barking logs for commercial use. Seller further contends that the clause would not be enforced by Oregon courts because it does not clearly cover accidents caused by Owner-indemnitee's sole negligence.

The principal issues are (1) whether the accident occurred before the "installation of the barker" was completed, and (2) whether the loss is covered by the general indemnification provision.

## (1)

Although Owner assumed control over the barker and was barking logs for commercial use at the time of the accident, it is clear from the agreement that the cat walk was part of the "installation" and that the parties intended to have the barker operated before "installation" was completed. The barker was to be in operation by September 3, 1957, and "installation" was to be completed by September 30, 1957. The injury to two of Seller's employees working on the cat walk, which took place on September 20, occurred in connection with the "installation of the barker" even though Owner's employees were actually operating the barker at that time.

## (2)

The second issue is whether the parties intended that Seller's general promise to be "responsible for all accidents and casualties of all kinds which may occur in connection with the installation of the barker," covers losses caused by the sole negligence of Owner, the indemnitee.

In Southern Pacific Co. v. Layman, 173 Or. 275, 145 P.2d 295 (1944), the licensee of a private railroad crossing had contracted to indemnify the railroad against any and all loss or damage from any cause whatsoever arising out of the maintenance, presence or use of the crossing. A train struck a harvesting machine at the crossing and the owner of the machine recovered a judgment against the railroad. The railroad then sued the licensee for indemnification. The court found that the loss had been caused by the sole negligence of the railroad and denied recovery, relying on the "firmly established rule that contracts of indemnity will not be construed to cover losses to the indemnitee caused by his own sole negligence unless such intention is expressed in clear and unequivocal terms." Southern Pacific Co. v. Layman, 173 Or. at 279, 145 P.2d at 296.

In marshalling the reasons behind this rule of construction, the court pointed out that when a general indemnification

138

clause may operate without including the negligence of the indemnitee, it will not be presumed that it was intended to include it.

> "The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it." Southern Pacific Co. v. Layman, 173 Or. at 279, 145 P.2d at 296, quoting Perry v. Payne, 217 Pa. 252, 262, 66 A. 553, 557, 11 L. R.A.,N.S., 1173 (1907).

The Oregon Supreme Court reaffirmed this rule and applied it in Glens Falls Indem. Co. of Glens Falls, N. Y. v. Reimers, 176 Or. 47, 155 P.2d 923 (1945). See also United States Fid. & Guar. Co. v. Thomlinson-Arkwright Co., 172 Or. 307, 141 P.2d 817 (1943) (dicta).

Owner asserts that the rule of construction set forth in Southern Pacific Co. v. Layman, supra, has been modified by the recent decision of the Oregon Supreme Court in Southern Pacific Co. v. Morrison-Knudsen Co., 216 Or. 398, 338 P.2d 665 (1959).

In Morrison-Knudsen the court held that a general promise of indemnification contained in a "spur track" agreement includes losses caused in part by the negligence of the indemnitee (railroad). However, the court was careful to point out that it was not departing from the Layman rule, and distinguished Layman on the ground that it belonged to a different class of cases:

> "In a word, the most striking overall difference between Layman and the case at bar lies in the fact that Layman was not a 'spur track' case. *In that area of railroad operation there is a growing body of distinctive law which gives force to our conclusions here and which are not applicable to situations like that reported in Layman.*" Southern Pa-

cific Co. v. Morrison-Knudsen Co., 216 Or. at 145, 338 P.2d at 673. (Emphasis added.)

The court reasoned that a general indemnity clause in a spur track agreement would be meaningless if it were not construed to cover losses caused at least in part by the indemnitee's own negligence. A railroad (indemnitee) will never be liable for injuries to third persons resulting from the presence or use of the spur track unless the railroad itself has been negligent. An indemnification clause for the benefit of the railroad would be meaningless if it were not construed to cover situations in which the indemnitee had been negligent to some degree. See Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 907, 20 A.L.R.2d 695 (applying Oregon law).

However, this reasoning does not apply to those cases in which a non-negligent owner (indemnitee) may be liable for the negligence of an independent contractor or of a user of his premises. In these cases, exemplified by Southern Pacific Co. v. Layman, 173 Or. 275, 145 P.2d 295 (1944), and Glens Falls Indem. Co. of Glens Falls, N. Y. v. Reimers, 176 Or. 47, 155 P.2d 923 (1945), a general indemnity provision for the benefit of the owner is meaningful even if it does not apply to losses caused by the negligence of the owner.

Morrison-Knudsen did not change the Layman rule; rather, it established a rule for a separate and distinct class of cases. Since the case at bar is not a spur track case, Morrison-Knudsen is not in point. The applicable rule of construction is that set forth in Layman. See Gray Line Co. v. Goodyear Tire & Rubber Co., 9 Cir., 1960, 280 F.2d 294.

Whatever else the general promise of indemnity may include, the Layman rule prohibits this court from reading into it an intent to indemnify for losses caused by the sole negligence of the indemnitee. If, in this case, Owner had wished to make Seller an insurer not only for losses caused by Seller's acts,

but also for losses caused by the Owner's sole negligence, that intention should have been expressed in clear and unequivocal language. The language here falls short of this requirement.

Judgment for defendant.