**WESTERN CONSTRUCTORS, INC.,**
a corporation, Appellant,

v.

**SOUTHERN PACIFIC COMPANY,**
a corporation, Appellee.

No. 20939.

United States Court of Appeals
Ninth Circuit.

July 10, 1967.

Rehearing Denied Sept. 1, 1967.

Jennings, Strouss, Salmon & Trask, Mark Wilmer, Snell & Wilmer, Phoenix, Ariz., for appellant.

Joseph Jenckes, Evans, Kitchel & Jenckes, Phoenix, Ariz., for appellee.

Before POPE, MERRILL and ELY, Circuit Judges.

ELY, Circuit Judge:

Appellee, hereinafter called "the railroad," filed suit in the United States District Court for the District of Arizona, seeking damages resulting from a collision between its freight train and a "carryall," an earth-moving machine, operated by appellant's employee. The appellant, which will be referred to as "the contractor," counterclaimed for damages sustained by it in the same accident. Jurisdiction of the court below rested upon diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332.

Each party filed a motion for summary judgment in its favor, and both motions were denied. While the record before us does not contain pretrial statements or a pretrial order, it does reveal that pretrial proceedings were conducted. These led to the District Court's determination that the jury trial which had been requested should be directed to the issue of liability only. It was also determined that the jury's role should be confined to the resolution of one issue, an issue pertaining to the extent, or degree, of the railroad's negligence, if any. After the presentation of evidence bearing upon this limited issue, the district judge directed a verdict in favor of the railroad. A judgment was entered in which it was held that the railroad was entitled to recover damages and that the contractor was not. The judgment, entitled "Partial Final Decree and Order Directing Entry of Judgment," provides for the retention of the District Court's jurisdiction for subsequent determination of the amount of the railroad's damage. It also recites that appeal to our court is appropriate under the provisions of 28 U.S.C. § 1292(b). We thereafter granted permission for the appeal.

In 1963 the Arizona Highway Department called for bids for the construction of a segment of a new highway. Prospective bidders were informed by the department that a private road to facilitate the movement of earth across the railroad's tracks would be provided and that the railroad would require the successful bidder to enter into an agreement with it concerning the right of way. The contractor was awarded the contract and became a party, with the railroad, to a "Private Roadway Agreement." It was at the intersection of the private road and the railroad's track that the collision occurred. The carryall, operated by Harold Kness, was being driven, empty, across the tracks to receive a load of dirt at a "borrow pit" on the other side. Kness had safely made many such crossings since the highway work had begun, but on this occasion his machine stalled on the tracks and was struck by the train.

The contractor's asserted right to recover on its counterclaim is based upon the contention that the accident was caused by the negligence of the employees of the railroad. On the other hand, the railroad's case does not depend upon a determination of fault. It rests upon a certain provision of the "Private Roadway Agreement," as follows:

"In consideration of the exposure to hazard of the operations of Railroad by reason of the construction, maintenance and use of said roadway, Li-

censee does hereby release and agree to indemnify and save Railroad harmless from and against all liability, claims, costs and expenses for loss of or damage to the property of either party hereto or of third persons, and for injuries to or deaths of Licensee or the agents, employees or invitees of Licensee or third persons or the employees of Railroad caused by or arising out of the presence, maintenance, use or removal of said roadway, regardless of any negligence or alleged negligence on the part of any employee of Railroad."

The railroad argues that, even though it may have been negligent, the contractor agreed, under the quoted provision, to indemnify it against the consequences of that negligence.

■ The contractor denies that the agreement has that effect and urges that, in any event, the question of whether it should be so interpreted is one which should have been submitted to the jury. It argues that the provision, properly construed, applies only to those losses which are "proximately caused" by the roadway itself, and that a loss cannot be said to be "caused by or arising out of the presence, maintenance, use or removal" of the roadway if it was proximately caused by the negligence of the railroad. The district judge rejected this theory, ruling that the agreement did apply to the particular mishap even though the negligence of the railroad may have contributed as a proximate cause. We agree.

■ We cannot accept the ingenious contention that the railroad's loss was not one "arising out of the * * * use" of the private roadway. It may not have been "caused" solely by the "use" of the roadway, but it most assuredly would not have occurred or arisen absent the existence of the roadway and the "use" which the contractor made of it. Indeed, the collision which did, in fact, occur is probably the very specific type of risk against which the railroad protected itself. Furthermore, to read the agreement as the contractor suggests

would render nugatory the crucial language, "regardless of any negligence or alleged negligence on the part of any employee of Railroad." There was, of course, no dispute as to the actual terms of the agreement; therefore, the burden of interpretation was properly assumed by the court. Gray v. Joseph J. Brunetti Construction Co., 266 F.2d 809 (3d Cir. 1959).

■ Additionally, the contractor urges that, if the agreement was intended to afford indemnity to the railroad against losses caused by its own negligence, it is invalid. The charge of invalidity is not based upon the ground that such a provision contravenes the public policy of Arizona, and we have discovered no decision of the Arizona courts which has so held. Instead, the contractor's objection is that the language of the provision does not unambiguously express the intention that indemnity of such breadth is to be provided. The pertinent rule has been well stated in Southern Pac. Co. v. Layman, 173 Or. 275, 279, 145 P.2d 295 (1944): "[C]ontracts of indemnity will not be construed to cover losses to the indemnitee caused by his own negligence unless such intention is expressed in clear and unequivocal terms." We hold that the language of the indemnity clause in question satisfies that test.

As we have previously remarked, the parties filed no pretrial statements, and the District Court made no pretrial order. From the contents of the motions for summary judgment and of transcripts of pretrial proceedings, we see views which guided the District Court to the course which was taken. The one which is most significantly related to our task, as expressed by the district judge, was that the railroad was "entitled to indemnity * * * unless the conduct of the plaintiff in the operation of the train involved in the collision with the carry-all was willfully or wantonly negligent." This opinion carried through to the judgment, although it was apparently agreed at a later time, at the beginning of the trial, that the de-

cisive factor should be the existence, *vel non,* of "wanton" negligence on the part of the railroad and that, in the then contemplated instructions to the jury, no different words of modification, such as "gross" or "willful," would be employed. It was intended, then, that after the presentation of the evidence, the jury should make a factual determination as to the degree of the railroad's negligence. The burden of proving that the railroad had been guilty of "wanton" negligence was cast upon the contractor.[1] After considering the evidence, the court determined, as a matter of law, that it was insufficient to support a jury finding in favor of the contractor's position and directed the verdict upon which the challenged judgment rests.

We are asked to review the evidence bearing upon the one issue regarded as dispositive by the district judge. The judgment, analyzed with the trial's proceedings, makes it evident that the district judge determined that the ultimate resolution of the controversy would hinge upon the one determination of fact, or of mixed law and fact, which he eventually made. Neither of the parties protested this determination, except as to its predicate that the indemnity clause was valid and applicable, and neither challenges it here. Assuming, without deciding, that there was a correct interpretation of Arizona law as to this point, we now turn to the evidence bearing upon the narrowly presented issue.[2]

We hold that the evidence, together with inferences which might reasonably be drawn therefrom, was sufficient to support a finding that "wanton" negligence of the railroad was a proximate cause of the accident. The Arizona Supreme Court has recently defined "wanton" negligence as conduct which "not only creates an unreasonable risk of bodily harm * * * but also involves a high degree of probability that substantial harm will result. * * * Wantonness implies a reckless indifference to the results of an act." Nichols v. Baker, 101 Ariz. 151, 153, 416 P.2d 584 (1966). The railroad knew of the work in which the contractor was engaged at the crossing in question. For an extended length of time the contractor's vehicles continuously crossed the tracks, and the railroad knew that it was necessary for them to do so. The particular carryall which was involved in the collision, a heavy, cumbersome, earth-moving machine, had itself crossed the tracks approximately one thousand times before the time of the catastrophe. From the point of the accident the railroad track was level for a distance extending at least five miles, and the view of the freight train's principal operators was unobstructed. The direction of a verdict in favor of a party in a jury trial is not supportable unless the evidence, with all justifiable inferences, is insufficient to support an opposite verdict. Baltimore & Ohio R. R. Co. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419 (1925); Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656 (9th Cir. 1963), cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L. Ed.2d 165 (1963). Members of the train's crew testified that they observed the contractor's vehicle approaching the crossing when the train was one or one and one-half miles away from the point of the accident. They testified that the train was about three-quarters of a mile from the point of the accident when the carryall stalled on the tracks. On the

---

1. We express no opinion as to the propriety of this determination under Arizona law. Nor do we decide whether imposition of the burden of proof would depend upon the claim in issue, that is, whether it be the contractor's suit to recover its own damages or, on the other hand, the contractor's resistance to the railroad's claim.

2. There is nothing in the record which indicates the views which the district judge might have taken toward the claims of both parties had there been a finding of "wanton" negligence on the railroad's part and, at the same time, a finding of the contractor's contributing negligence in one or another degree.

other hand, employees of the contractor testified that the stalling occurred when the train was approximately one and one-half miles away. This is an example of many conflicts which appear in the testimony. There was no remarkable conflict as to the speed of the train. The evidence clearly establishes that the speed at the time of the accident was at least sixty miles per hour. Members of the train crew testified that the train was traveling at approximately sixty-three miles per hour when they first observed the carryall. The engineer testified that he would have ordinarily operated the train at sixty-five miles per hour in the area in question, but that, as he approached the worksite, he had reduced the train's speed to sixty-three miles per hour in order to "control my train better." In the light of his testimony that the train's weight and momentum would prevent the slightest reduction of speed within the distance in question, it seems to us that a jury might have found that there was "wanton" negligence in the circumstances in failing to reduce the speed more than two miles per hour for "better control." Under the evidence, the fact that there was no reduction in speed over the last one and one-half miles of the track's course is clear. In each of two locomotives there was a speed recordation device, and the tapes from those devices were introduced in evidence. The revelations of one of them were not clear, but the other corroborated oral testimony to the effect that the speed, whether sixty or sixty-three miles per hour, was not reduced. The train's operators testified that the train's brakes were applied, but the jury was not, of course, required to accept this testimony. Scates v. Isthmian Lines, Inc., 319 F.2d 798, 799 (9th Cir. 1963). As previously recited, the railroad undertook to explain the lack of diminution of speed by emphasis upon the weight and momentum of its equipment. In this connection it should be pointed out that the train consisted of two locomotives and eighty cars. It weighed almost four thousand tons. Negligence, whether ordinary or wanton, is a relative term. The duty of care increases with the degree of danger which should reasonably be apprehended. One is required to conduct his affairs in the light of the reasonably foreseeable consequences of his acts, and the foreseeable consequences of a four-thousand-ton freight train's colliding with any substantial object while traveling at sixty miles per hour are clearly grave. Portions of the tapes from the speed recording devices indicate speed variations which could support an inference that, had the engineer made emergency application of brakes, as he testified that he did at the time when, according to his testimony, he saw the contractor's vehicle stalled upon the tracks, the train would have slowed considerably before it reached the point of collision. Thus, the evidence did not foreclose a determination that the train's brakes were not applied. If they were not, one might infer that the train's operators did not see the stalled vehicle. Fully aware of the construction work ahead, with the necessary movement of vehicles which caused the engineer himself to realize the need for "better control" of his train in order to avoid danger which he himself foresaw, the engineer could have been found guilty of wanton negligence in neglecting vigilance or, in the circumstances, operating a four thousand-ton train at a speed of sixty-miles per hour and, without the application of brakes, maintaining the speed in heedless disregard of observed danger.

Reversed and remanded.